841 So.2d 894 (2003)
STATE of Louisiana
v.
Troy TAYLOR.
No. 02-KA-1063.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 2003.
*895 John M. Crum, Jr., District Attorney, Rodney Brignac, Assistant District Attorney, Edgard, LA, for Plaintiff/Appellee, The State of Louisiana.
Prentice L. White, Louisiana Appellate Project, for Defendant/Appellant, Troy Taylor.
Panel composed of Judges SOL GOTHARD, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On April 16, 2001, a St. John Parish grand jury indicted the defendant, Troy Taylor, for the second degree kidnapping and attempted second degree murder of Secondra Johnson, in violation of LSA-R.S. 14:44.1 and 14:27:30.1. The defendant was arraigned on May 2, 2001 and entered a plea of not guilty. On May 21, 2001, the defendant filed a motion for mental examination and appointment of sanity commission, which was granted. After being evaluated by the court-appointed doctors, the defendant was found competent to stand trial on June 27, 2001.
On February 19, 2002, the defendant proceeded to trial by jury. He was rearraigned *896 on the charges and pled not guilty and not guilty by reason of insanity. After a three-day trial, a twelve-person jury found the defendant guilty as charged on both counts of the indictment, by a vote of ten to two. The defendant thereafter filed a motion for new trial and a motion for post verdict judgment of acquittal, both of which were denied on April 3, 2002. On May 8, 2002, the defendant was sentenced to twenty-five years at hard labor for the second degree kidnapping conviction, with two years of this sentence to be served without benefit of parole, probation, or suspension of sentence. He was also sentenced to fifty years at hard labor, without benefit of parole, probation, or suspension of sentence, for the attempted second degree murder conviction, to be served concurrently with the twenty-five year sentence for second degree kidnapping. The defendant filed a motion to reconsider sentence, which was denied, and a motion for appeal, which was granted by the trial court on July 2, 2002.
FACTS
The victim, Secondra Johnson, was twenty years old at the time of the incident in this case. At trial, she testified that she has known the defendant since she was a young girl. Her testimony revealed that on February 22, 2001, she was alone at her residence on 219 Spruce Street when she heard a door open. She remained in her bed sleeping until the defendant opened her bedroom door, jumped on her back and put a knife to her throat. Secondra testified that the defendant demanded to know where her purse was and she responded by telling him that it was in the car. She stated that they fought in her bed and then the defendant took her to the kitchen. She asked the defendant why he was behaving this way, and the defendant responded, "Don't say my name." The defendant then stated, "You say my name again I'm going to stab you." Secondra testified that she said the defendant's name again at which point he stabbed her under the chin. She fought with the defendant and he stabbed her under the chin again.
Secondra testified that the defendant brought her outside of the house and put her into her car. She was able to escape from the car and run toward her uncle's home, but the defendant pursued her and stabbed her once again underneath her chin and dragged her back to the car. She stated that the defendant then drove onto the interstate, while she continued to plead with him to stop and bring her to a hospital, but the defendant kept driving. The defendant stated, "I'm going to do away with your body and your car where nobody never find you." Secondra testified that the defendant made her strip naked in the vehicle and thereafter touched her vagina.
As they traveled along the interstate and approached Siegen Lane in Baton Rouge, Secondra opened the door and jumped out of the vehicle, which was traveling around 60 miles per hour. Secondra testified that, after jumping from the vehicle, she stopped a van and jumped inside. The driver of the van then exited onto Siegen Lane and dialed 911. When the ambulance and police arrived, Secondra stated that her attacker was the defendant, Troy Taylor.
Secondra testified that she remained in the hospital for several days. While in the hospital, an artificial artery was placed in her throat, she required a pint of blood, and she received 27 staples, as well as stitches in her hands. She testified that Detective Joseph showed her a photographic lineup while she was in the hospital, and she identified the defendant as her attacker.
On cross-examination, Secondra testified that she had known the defendant since *897 she was a young child and that he had stayed at her residence for a brief period of time. She also testified that the defendant had never been violent in the past nor did he appear to have been sexually interested in her before.
Holly Kohan, an administrative assistant at Our Lady of the Lake Hospital in Baton Rouge, testified that on the morning of February 22, 2001, she was driving on Interstate-10 (I-10) near the Siegen Lane exit when she saw a woman "fly out" of a moving vehicle. She testified that she saw someone stop to assist the female, so she continued to drive to work where she called 911. Kohan also testified that the driver of the vehicle from which the woman exited did not attempt to assist the woman.
Steven French, a sales representative for Glaser Wholesale in Baton Rouge, testified that on February 22, 2001, he saw a red Mitsubishi Eclipse swerve, and a nude woman exited the vehicle. He then observed the car exit onto Siegen Lane, and he pursued the vehicle. French testified that the vehicle made a U-turn and got back on the interstate heading toward Baton Rouge. He was able to get the license plate number of the vehicle and called 911. French stated that the vehicle was traveling around 55 to 60 miles per hour when the black female fell from the car.
Evelyn Bennet, an employee at Pennington Biomedical Research Center testified that on February 22, 2001, she was traveling on I-10 when she saw a naked woman bleeding on the side of the road. Bennet testified that she stopped and pulled the woman inside her van and, after exiting from the interstate, dialed 911. Bennet also stated that when the woman entered her van, she repeatedly screamed for her to lock the door.
Barbara Wright, Secondra Johnson's grandmother and a resident of 219 Spruce Street in Laplace, testified that she left her home on the morning of February 22, 2001 at approximately 5:25 a.m. in order to go to work. She stated that she received a phone call at work and left to go home. Wright testified that when she arrived home, she attempted to make a phone call at which time she noticed a chair flipped over and blood all over the kitchen.
On cross-examination, Wright testified that she knew the defendant, Troy Taylor, and that he had previously resided with her for a couple of months before the year 2001. She stated that the defendant had never been violent and that he was friendly with the victim, Secondra Johnson. Wright also testified that she ordered the defendant to leave her home when she suspected him of stealing things from her; however, they remained friendly thereafter. She stated that the defendant had a key when he lived there, but she had gotten it back.
Felix Joseph, a former criminal investigator with the St. John Parish Sheriff's Office, testified that he conducted an investigation of this incident, which resulted in the apprehension of Troy Taylor. He verbally advised him of his constitutional rights, which he waived, and Mr. Taylor also signed a written waiver of his rights. The defendant was thereafter interviewed.
According to Joseph, the defendant told him that he took two hits of acid or LSD on the morning of February 22, 2001. The defendant stated that he was dropped off at the 219 Spruce Street residence, and he knocked on the door. Secondra Johnson answered the door and let him into the home. Joseph testified that the defendant told him that the next thing he remembered was driving Secondra's bloody vehicle to Baton Rouge. The defendant thereafter told Joseph that he returned to Laplace and abandoned the vehicle in the *898 Cambridge subdivision. Joseph also testified that Secondra Johnson identified the perpetrator as Troy Taylor, and she picked him out of a lineup.
Penny Brown Kendrick, the defendant's former girlfriend, testified that she remembered seeing the defendant on February 21, 2001 at around 6:30 in the afternoon. She testified that the defendant did not appear to be intoxicated and that he remained at her home until approximately 9:30 that night. Kendrick stated that the defendant called later that night but she did not remember the time.
Tiyanica Matthews, Secondra Johnson's cousin, testified that she took photos of Secondra's injuries after the incident. She also testified that Troy Taylor was at a party for her grandmother, Barbara Wright, on February 21, 2001. The defendant left the party with her, and she later dropped him off at Penny Brown Kendrick's home. Matthews also testified that the defendant did not appear drunk when she was with him.
The defendant, Troy Taylor, testified that on the night of February 21, 2001, he went to an EZ-Serve where he purchased a pack of cigarettes and some gin. Later that night, he stopped and bought a rose in a glass and a screen in order to make a crack pipe, after which he went to a bar and smoked crack cocaine. The defendant also testified that he purchased more crack cocaine and gin later that night, in addition to obtaining two hits of acid or LSD from two white males. The defendant stated that the two white males later drove him to Redwood Street, where he consumed the two hits of acid at around 3:00 in the morning.
The defendant testified that he stood on the corner of Redwood Street for a period of time. Then, after feeling the effects of the gin and LSD, he went to Secondra Johnson's residence where he knocked on her window and was let inside by Secondra. Once in the residence, he sat in the living room where he smoked two more rocks of crack cocaine. The defendant testified that the next thing he remembered was that he was driving Secondra's car on the interstate in Baton Rouge, and Secondra was bleeding from her neck and face. Secondra told him that he had attacked her and asked him to bring her to a hospital. He noticed that Secondra's neck was bleeding and asked her to put her shirt over her neck which she did. He stated that Secondra was not naked at that time.
The defendant further testified that Secondra jumped from the car near the Siegen Lane exit. Thereafter, he exited onto Siegen Lane and got back on the interstate driving toward Baton Rouge. He testified that he eventually made a U-turn and drove back toward where Secondra had exited the car, but when he noticed cars stopped near her, he decided to keep driving to his mother's house in Reserve. The defendant stated that he then drove back to Baton Rouge to Earl K. Long Hospital to determine if Secondra had been admitted to the hospital. When he could not locate her at the hospital, he returned to Laplace, and drove to Jackson Hewitt tax service to pick up his "income tax." The defendant testified that he was still driving Secondra's car during this time but that he later parked the car in Cambridge subdivision and secured a ride to Metairie.
The defendant stated that he called the police the following Monday and turned himself in. He also testified that he had a prior felony conviction for first degree robbery.
The defense called Dr. Pat Kent, a licensed psychotherapist and Regional Director for the State of Louisiana's Office *899 for Addictive Disorders Treatment Region in Southeast Louisiana, who testified as an expert in the field of the effects of alcohol and drug use. Dr. Kent stated that, after having examined the defendant, it was his opinion that the defendant suffered from toxic psychosis and was not rational at the time of the offense.
The state called Dr. Craig Troxlair in rebuttal, who testified as an expert in the field of forensic psychiatry and the effects of alcohol and drugs on humans. Dr. Troxlair testified that it was his opinion that it was more unlikely than likely that the defendant would not have remembered anything from the time he got to the victim's house until the victim was out of the car.
DISCUSSION
In his first assignment of error, the defendant argues that the trial court erred in denying his motion for reconsideration of sentence, because the record reflects that he was heavily intoxicated at the time of the offense and similarly situated defendants have received lesser sentences.
The United States and Louisiana Constitutions both prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. art. I, § 20. Even a sentence within the prescribed statutory limit may violate a defendant's constitutional right against excessive punishment. State v. Sweeney, 443 So.2d 522, 531 (La.1983); State v. Bradham, 94-71 (La.App. 5 Cir. 5/31/94), 638 So.2d 428, 430; State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95, 97. In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Daigle, 96-782 (La.App. 5 Cir. 1/28/97), 688 So.2d 158, 159, writ denied, 97-0597 (La.9/5/97), 700 So.2d 506.
Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Quebedeaux, 424 So.2d 1009, 1014 (La. 1982), aff'd on remand, 446 So.2d 1210 (La.1984); State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1234, writs denied, 97-1069 (La. 10/13/97), 703 So.2d 609, and 00-3460 (La.10/12/01), 799 So.2d 496. However, the trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1219. This Court should further consider three factors in reviewing a judge's sentencing discretion 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Slang, 94-332 (La.App. 5 Cir. 11/16/94), 646 So.2d 1037, 1040-1041.
The defendant challenges his fifty-year sentence for his attempted second degree murder conviction, but he does not argue that his twenty-five year sentence for second degree kidnapping is excessive. A sentence for attempted second degree murder ranges from ten to fifty years at hard labor without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:27 and 14:30.1.
The defendant argues that the trial court failed to take into consideration certain mitigating factors, such as the defendant's prior amicable relationship with the victim's family and his intoxication. However, the record reflects that the trial court took numerous factors into consideration and also commented on the defendant's intoxication. At sentencing, the trial judge stated that she considered the *900 pre-sentence investigation report (PSI) and the letter that the defendant submitted. She noted that the victim was severely scarred as a result of being stabbed, jumping from a car moving at a high rate of speed, and being sexually molested by the defendant. She also indicated that she considered the defendant's intoxication as an aggravating factor, not a mitigating factor, because the jury rejected the defendant's contention that he did not know what he was doing. She further noted that the many aggravating factors outweighed the defendant's argument that he did not know what he was doing.
The defendant also asserts that his sentence is excessive when compared with similar types of crimes. In support of his argument, he cites cases in which defendants have received less severe sentences than the fifty-year sentence he received. However, there are cases similar to the instant case in which sentences of 50 years have been held not to be excessive.
In State v. Breland, 97-2880 (La.App. 1 Cir. 11/6/98), 722 So.2d 51, the First Circuit upheld a defendant's fifty-year sentence for attempted second degree murder and twenty-five year sentence for simple rape, which were to run consecutively with one another. In Breland, the defendant attacked and raped an eleven-year-old girl while the victim's mother was away on a church-related trip. The defendant stabbed the victim twice and threatened that, if she screamed, he would stab her again. When the victim started to scream, the defendant stabbed her again. The defendant later walked the victim to a back porch, where he slashed her in the throat after which the victim collapsed to the floor. The defendant contended that the sentence was excessive and that the trial court erred in not considering amongst other mitigating factors that he had epilepsy and had previously been treated for psychiatric problems. The First Circuit, however, upheld the sentence, noting that the defendant stabbed the victim several times in the throat, tried to smother her, and slashed her throat. The court also noted that the victim had sustained puncture wounds on her hands and that the scars on her neck would likely be permanent.
We find that the Breland case is analogous to the present case. Like Breland, the victim in the present case was stabbed several times by the defendant and will likely suffer permanent scarring as a result of the attack. Furthermore, as in Breland, the defendant's attempted second degree murder occurred while he was participating in another felony, second degree kidnapping.
Although the victim in Breland was younger than the victim in this case, the defendant's sentences in this case are concurrent, and the sentences in Breland were to be served consecutively. It should also be noted that, unlike Breland, the defendant in the present case had a prior conviction for first degree robbery.
As stated above, the trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence as excessive if it is supported by the record. State v. McCorkle, supra. Considering the record in this case, as well as the factors considered by the trial court and the case law involving similar crimes, we find that the trial judge did not abuse her discretion in imposing a sentence of 50 years at hard labor for the defendant's attempted second degree murder conviction. Accordingly, we affirm the defendant's sentence.
In his second assignment of error, the defendant argues that he was denied the right to effective assistance of counsel during the discovery phase of his case, *901 because his attorney failed to file a written motion to suppress confession prior to the introduction of Felix Joseph's testimony.
A claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355, 359 (La.1987); State v. McIntyre, 97-876 (La. App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. Only when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal may it be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La.1993). We find that the record contains sufficient evidence to decide this issue at this time.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a twopronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, and 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Soler, supra at 1075. Because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must be specific to the facts of the case. State v. Peart, supra at 788.
In the present case, the defendant argues that defense counsel was deficient in failing to file a motion to suppress his confession made to police, because the jury was allowed to listen to Detective Joseph's testimony without having the officer's recollection of the defendant's statement questioned prior to his trial testimony. For purposes of an ineffective assistance of counsel claim, the filing of pretrial motions is squarely within the ambit of the attorney's trial strategy, and counsel is not required to engage in efforts of futility. State v. Pendelton, 96-367 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, 156, writ denied, 97-1714 (La.12/19/97), 706 So.2d 450; State v. Morris, 98-236 (La.App. 5 Cir. 9/16/98), 719 So.2d 1076, 1081.
In the instant case, the record reflects that defense counsel objected to Felix Joseph testifying at trial regarding the statement he took from the defendant. The thrust of defense counsel's objection was that it was a statement, not a confession, about what went on the night of February 21, 2001. Defense counsel also objected that no foundation had been laid for Felix Joseph's testimony as to whether the defendant had been advised of his rights. Thereafter, the state produced an advice of rights form signed by the defendant and the questioning of Felix Joseph resumed.
In the present case, it appears that defense counsel's failure to file a motion to suppress was not a part of trial strategy, because he objected to Detective Joseph's testimony at trial and could have challenged *902 his testimony in a motion to suppress. However, even if the failure to file a written motion to suppress were to constitute a deficiency under the first prong of Strickland, the record reveals that the defendant has not met the second prong of Strickland, which requires that the defendant prove actual prejudice and that there is a reasonable probability that the outcome of the trial would have been different if the motion had been filed. Strickland, 466 U.S. at 693, 104 S.Ct. at 2068.
The statement that the defendant contends should have been suppressed was the one given to Detective Felix Joseph; however, the testimony given by Joseph regarding what the defendant stated to him was essentially the same as the defendant's own testimony at trial. In fact, the defendant's testimony was more detailed in its description of what occurred on the night of February 21, 2001. Furthermore, it should be noted that defense counsel's strategy was to establish that the amount of drugs and alcohol consumed by the defendant caused him to become psychotic and black out. Joseph's testimony regarding the defendant's statement only bolstered the defense's argument at trial. Furthermore, the jury had more than sufficient evidence to convict the defendant if the statement had been suppressed. Therefore, the defendant cannot show that the outcome of the trial would have been different if defense counsel had filed a motion to suppress.
Based on the foregoing, we find that the defendant was not prejudiced by defense counsel's failure to file a motion to suppress, because even if the defendant's statement had been suppressed, it is doubtful that it would have changed the outcome of the trial. Accordingly, we find that the defendant has not shown that he was deprived of effective assistance of counsel.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals that there are no patent errors.
For the reasons set forth above, we affirm the defendant's convictions for second degree kidnapping and attempted second degree murder, as well as the sentences imposed by the trial court.
AFFIRMED.