888 So.2d 928 (2004)
STATE of Louisiana
v.
Franklin CARTER.
No. 04-KA-482.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
*930 Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Appellant, Franklin Carter.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler  Appellate Counsel, Douglas W. Freese, Cameron Mary  Trial Counsel, Assistant District Attorneys, Twenty-Fourth Judicial District Court, Parish of Jefferson, Gretna, LA, for State of Louisiana.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
*931 SUSAN M. CHEHARDY, Judge.
On July 13, 2000, the Jefferson Parish Grand Jury indicted defendant, Franklin Carter, on one count of aggravated rape, in violation of La. R.S. 14:42, one count of forcible rape, in violation of La. R.S. 14:42.1, and two counts of aggravated crime against nature, in violation of La. R.S. 14:89.1. Defendant was arraigned on July 17, 2000, and pled not guilty to all counts.
On December 29, 2000, defendant filed a Motion to Sever. On January 12, 2001, the trial judge heard the severance motion and took it under advisement.
On April 23, 2001, the trial court issued a written judgment, granting defendant's severance motion in part. The trial court ordered that the charges in Case No. 00-4108 would be severed as to each victim.[1] The trial court ordered that defendant would be tried on the crimes that juvenile victim, N.D.,[2] alleged, namely forcible rape and one count of aggravated crime against nature. On July 9, 2001, the State filed a motion asking the court to reconsider its ruling to sever the offenses. After considering briefs submitted by the State and the defendant, the trial judge denied the State's motion to consolidate the offenses.
On November 5 and 6, 2002, defendant was tried by a twelve-person jury on forcible rape and aggravated crime against nature. The jury returned verdicts of guilty as charged on both counts, which were declared legal by the trial judge.
On January 10, 2003, the trial court sentenced defendant to thirty-seven years at hard labor without benefit of parole, probation, or suspension of sentence for forcible rape and fifteen years at hard labor, without benefit of parole, probation, or suspension of sentence for aggravated crime against nature. The trial judge ordered the sentences be served concurrently.
That same day, the State filed a habitual offender bill of information, alleging defendant to be a second felony offender. Defendant denied the allegations of the habitual offender bill of information. Defendant also filed a Motion for Appeal and a Motion to Reconsider Sentence that day. The appeal motion was granted on January 14, 2003.[3]
On February 13, 2004, the trial court heard arguments on the Motion to Reconsider Sentence, and denied the motion. The trial court held a habitual offender hearing on March 5, 2004, and took the matter under advisement.
On March 26, 2004, the court found defendant to be a second felony offender, and issued a written Judgment and Reasons. On that day, the trial judge vacated defendant's *932 forcible rape sentence and imposed an enhanced sentence of thirty-seven years at hard labor without benefit of parole for two years and without probation or suspension of sentence. The court ordered that the habitual offender sentence run concurrently with the sentence previously imposed on count four.
Defendant filed a Motion for Appeal on March 26, 2004. The motion was granted on March 30, 2004. Defendant now appeals his convictions and sentences on counts 2 and 4 of the indictment.

Facts
N.D.,[4] the victim, who was born on April 28, 1986, and her mother moved to Grand Isle, Louisiana in 1999. N.D. became "best friends" with K.B., a girl that she met at school. Defendant, Franklin Carter, was K.B.'s mother's boyfriend, who lived in the family's home. When K.B.'s father, who also resided at the family's home, was working out of the country, defendant slept in K.B.'s mother's room. When K.B.'s father was in town, defendant slept in a small room on the first floor. At times, the victim went on outings with K.B., her mother, and defendant. N.D. testified that she believed defendant to be a nice person, and she trusted him.
N.D. testified that, in May 2000, she spent the night at K.B.'s house. The two girls stayed up late watching movies and talking until they went to sleep in the upper bunk of the bunk beds in K.B.'s room. During the night, N.D. remembered waking up to defendant rubbing her leg. He then said, "Let's go downstairs. We're just going to fool around." Even though N.D. told defendant to leave her alone, he continued rubbing her leg and even put his finger into her vagina.
N.D. testified that she was frightened of defendant and she told him to leave. Defendant picked her up and set her down on the floor next to the bed. N.D. told him she was going to get back into bed. Defendant said, "No, you're not[.]" He then carried her downstairs to his room and placed her on his bed. N.D. testified that she tried to scream but she was too frightened and "nothing came out."
N.D. stated that defendant asked her if she wanted to smoke a "joint." She refused but defendant lit up the joint and offered it to her. She took it then gave it back to him. Defendant then pushed her shoulders back until she was lying on the bed and pinned both of her wrists behind her back with one hand. Defendant tried to kiss her lips, but she turned her head to prevent it. He pushed her t-shirt aside with his free hand and rubbed his body against hers. He also pushed her boxer shorts and underwear aside and touched her vagina with his mouth and tongue. Defendant then put his penis into her vagina. She struggled to free herself and asked him to stop. Defendant stopped, apologized two or three times and let her go. She ran upstairs, crying, and got back into bed with K.B.
N.D. did not tell K.B. what happened that night because she was scared of defendant. In the morning, N.D. got up early, collected her things, and went home because she was scared and she wanted to forget what happened. She called K.B. later that day and, when K.B. asked what was wrong, N.D. told her that defendant had raped her. N.D. reported the incident to Grand Isle police two weeks later.
K.B. testified that defendant was her mother's boyfriend, and that he stayed at *933 her family's house for extended periods of time when her father's work called him out of town. She stated that N.D. spent the night at her house on or about May 12, 2000. They went to sleep in her bedroom at about midnight or 1:00 a.m.
K.B. was awakened by the sound of defendant talking to N.D. She heard defendant tell N.D. to go downstairs with him. K.B. testified that she did not say or do anything at that time because she was scared. Defendant took N.D. out of the bedroom, and N.D. later returned, crying.
K.B. testified that N.D. went home in the morning and acted like nothing was wrong. N.D. telephoned her later that day, however, and told K.B. defendant had raped her.
Detective Jo Lynn Cummings is assigned to the Personal Violence Unit of the Jefferson Parish Sheriff's Office. On May 26, 2000, the Grand Isle Police Department requested her assistance in investigating N.D.'s sexual assault allegations. Cummings testified that she did not order a medical examination of the victim because she learned the offense occurred on or about May 12, 2000. The officer stated it is common for victims of sex offenses to delay reporting. After interviewing N.D. and K.B., Cummings arrested defendant. At the time of his arrest, defendant reported that his birthdate was April 24, 1959. After hearing the testimony and evidence, the jury unanimously found that defendant was guilty as charged of forcible rape and aggravated crime against nature.
In this assignment of error, defendant contends that the evidence was insufficient to support conviction for forcible rape and aggravated crime against nature.[5] He points out that N.D. was the State's only eyewitness, and there was no physical evidence to corroborate her testimony. He calls N.D.'s account implausible and unreliable in several respects.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
La. R.S. 14:41 defines rape as an act of anal or vaginal sexual intercourse with a person without that person's consent. Slight penetration is sufficient to complete the crime, and emission is not necessary. The essential elements of forcible rape are: 1) an act of vaginal or anal intercourse; 2) without the lawful consent of the victim; 3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances in which the victim reasonably believes that resistance would not prevent the rape. La. R.S. 14:42.1.
La. R.S. 14:89, in pertinent part, defines crime against nature as the unnatural carnal copulation by a human being with another *934 of the same sex or opposite sex. Aggravated crime against nature, as it applies to this case, is a crime against nature committed when the victim is under the age of seventeen, and the perpetrator is at least three years older than the victim. La. R.S. 14:89.1(A)(6).
Defendant argues that the State did not produce any medical or scientific evidence to link him to either offense. Specifically, he complains that N.D. was not examined by a physician to determine whether her hymen was intact, and to look for evidence such as bodily fluids or pubic hairs. This Court has found that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Tapps, 02-0547, p. 8 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1001, writ denied, 02-2921 (La.4/21/03), 841 So.2d 789; State v. Hotoph, 99-243, p. 17 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062; 00-0150 (La.6/30/00), 765 So.2d 1066.
At trial, N.D. identified defendant as the perpetrator. N.D. testified that defendant put his penis into her vagina so the evidence was sufficient to prove the element of vaginal intercourse. N.D. said she did not consent to sexual relations with defendant so lack of consent was proved through the victim's testimony. N.D. testified at trial that defendant, an adult, was larger and stronger than her, picked her up out of bed and carried her to his bedroom, despite her verbal protests. She further testified that defendant pushed her into a reclining position on his bed, and pinned both of her hands behind her back. When she tried to free her hands, defendant gripped them tighter. The victim's testimony was also sufficient to prove the force element.
Dr. Scott Benton was accepted by the court as an expert in forensic pediatric medicine and child sexual abuse. He is Medical Director of the Children At Risk Evaluation Center at Children's Hospital of New Orleans. He did not interview or examine N.D.
Dr. Benton testified that his program makes it a priority to see children within 72 hours of an incidence of sexual abuse. That is because any visible physical damage of sexual abuse, if there is any, tends to heal quickly. If the victim waits to report the incident, which is often the case, any injury will most likely have healed. This includes injuries to the hymen and the vagina due to penetration. If there is a two-week delay in reporting, he would not expect to see any physical signs of abuse.
Detective Cummings testified that N.D. did not report the incident until two weeks after the fact. Cummings said she did not order a medical examination for N.D. Had she learned of the incident sooner, she would have had N.D. examined.
In State v. Wallace, 00-1745, p. 9 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297, this Court found the evidence was sufficient to support a conviction for forcible rape, despite the absence of physical evidence, where the victim identified defendant as the perpetrator, and a physician explained the reasons for the lack of such evidence. In the instant case, the testimony of Cummings and Benton was sufficient to explain the lack of medical evidence. The State presented sufficient evidence to prove the elements of the crime of forcible rape.
Additionally, the State provided sufficient evidence to prove the elements of aggravated crime against nature. Oral sex constitutes "unnatural carnal copulation," *935 as contemplated by La. R.S. 14:89 and R.S. 14:89.1. State v. Smith, 99-0606, pp. 5-6 (La.7/6/00), 766 So.2d 501, 506. N.D. testified that defendant touched her vagina with his lips and tongue so her testimony is sufficient to prove the element of "unnatural carnal copulation."
N.D. testified that her date of birth is April 28, 1986 and that she was fourteen years of age in May of 2000. Detective Cummings testified that defendant told her his date of birth is April 24, 1959. He was, therefore, forty-one years old at the time of the offenses. The State thus proved the age element of the victim and the perpetrator.
Defendant further challenges the sufficiency of the evidence by arguing that the State's case centered on N.D.'s testimony, which he terms unreliable. He points out that the victim could not remember other events that occurred on the day of the incident, and that she could not remember how she got home from K.B.'s house the following morning.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a conviction. State v. Tapps, 02-0547 at p. 8, 832 So.2d at 1001. It is not the role of an appellate court to assess witnesses' credibility or to reweigh evidence. Those are functions of the trier of fact. State v. Wallace, 00-1745 at p. 8, 788 So.2d at 584. We will not reweigh this evidence on appeal.
Defendant further maintains that N.D.'s veracity is suspect because she did not report the charged offenses until two weeks after they were alleged to have occurred. Dr. Benton, who was accepted as an expert on child sexual abuse and forensic pediatrics, testified that a delay in reporting among child victims of sexual abuse is the norm. Children are generally reluctant to report sexual abuse for three reasons: 1) they are not aware the activity is against the law, or that there are people they can go to for help; 2) they are threatened or intimidated by the perpetrator; or 3) the perpetrator is someone close to them, and they do not want anything bad to happen to him.
N.D. testified at trial that she did not report the incident to K.B. or her mother immediately because she did not know what defendant would do, and because she was not certain that anyone would believe her. The following day, she acted as if everything was alright because she was afraid, and because she wanted to forget what had happened. N.D.'s explanation of her behavior corresponds with Dr. Benton's testimony regarding child reporting.
Defendant argues that the testimony of the State's corroborating witness, K.B., was suspect, as she had also accused defendant of committing unlawful sex acts with her. There was no testimony at trial regarding any allegations K.B. might have made against defendant. Those facts are not, therefore, before this Court. In any case, K.B.'s credibility was a matter for the trier of fact, and will not be reweighed on appeal.
Finally, defendant argues that the descriptions of events given by N.D. and K.B. were implausible. He points out that K.B.'s parents were sleeping in the bedroom next to hers, and that a babysitter was also sleeping there that night. He asserts that even the smallest noise would have awakened someone. K.B., who was in the room when defendant allegedly carried off N.D., was awakened. She testified that she did not attempt to assist N.D. because she was scared. N.D. testified that she was too scared to cry out for help; she opened her mouth and nothing would come out. Defendant committed the sexual *936 acts in his room, which was on the first floor of the house. The rest of the family, who were asleep in upstairs bedrooms, would not necessarily be able to hear noises from the defendant's room on the first floor.
Based on the foregoing, a rational trier of fact could have reasonably found that the State presented sufficient evidence at trial to prove defendant committed forcible rape and aggravated crime against nature under the Jackson standard.
Defendant next argues that the trial court erred in failing to grant a mistrial or to admonish the jury after the prosecutor asked a question of a State witness, K.B., which constituted an impermissible reference to other crimes. During redirect examination, the prosecutor asked K.B. why she did not say something when defendant entered her bedroom and took N.D. away, K.B. responded," `Cause I was scared." Mary then asked, "Scared of what?"
Defense counsel immediately requested a bench conference and, out of the jury's hearing, objected to the line of questioning and moved for a mistrial. Counsel argued that, "the mere asking that question puts me and my client in an impossible position." He further argued that if K.B. should respond that she was scared of defendant, it would lead the jury to infer defendant had committed a sex offense against someone other than N.D.
The prosecution argued that if the court did not allow K.B. to answer the question, her credibility with the jury would be diminished. The judge rejected the prosecution's argument, informed the prosecution she would not allow the question and also denied defendant's motion for mistrial. When defense counsel asked the judge to strike the prosecutor's question and admonish the jury to disregard it, the trial judge denied counsel's request, stating, "What's in is in, and I'm going to allow it to remain."
Defendant now argues that the prosecution's question to K.B. regarding what she was scared of implied that defendant had done something to K.B. to cause her to fear him. As such, defendant asserts, the question constituted inadmissible other crimes evidence. Defendant complains that the trial court erred in failing to grant the proper remedy, i.e., a mistrial or an admonishment.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is inadmissible at trial due to the risk of grave prejudice to the defendant. State v. Williams, 01-1007, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1026, 1030.
Article 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]
The article also provides that, on motion of the defendant, the judge may admonish the jury to disregard the remark or comment instead of granting a mistrial. La.C.Cr.P. art. 770(4).
"Mistrial is a drastic remedy and is warranted under La.Code Crim. Proc. art. 770 only when a remark or comment referencing an accused's commission of other crimes results in prejudice to his substantial rights sufficient to undermine the fairness of trial." State v. Broaden, 99-2124, p. 16 (La.2/21/01), 780 So.2d 349, 360, fn. 5, *937 cert. denied, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001). Reference must be to other crimes committed or alleged to have been committed by the defendant. State v. Bell, 02-1127, p. 5 (La.App. 5 Cir. 2/25/03), 840 So.2d 656, 659; State v. Ware, 01-194, p. 15 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, 504.
Here, we conclude that the trial court did not err in denying a mistrial, or in denying an admonishment since the prosecutor's question did not make specific mention of another crime committed by defendant. We find this assignment of error lacks merit.
In his third assignment of error, defendant argues that the trial court erred in imposing an excessive sentence. Defendant claims that his fifteen-year sentence for aggravated crime against nature and his thirty-seven-year habitual offender sentence for forcible rape are constitutionally and statutorily excessive.[6] Defendant argues that the record does not show the trial court considered the sentencing criteria of La.C.Cr.P. art. 894.1, or that it sufficiently articulated reasons for the sentences. He further complains that the court failed to tailor the sentences to him and to the offenses of which he was convicted.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677 (citing State v. Dorthey, 623 So.2d 1276 (La.1993)). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992).
Three factors to be considered in reviewing a sentence for excessiveness are: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same court and other courts. State v. Tracy, 02-0227, p. 21 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La.4/4/03), 840 So.2d 1213. The trial judge has wide discretion in imposing sentences within the statutory limits, and a sentence will not be set aside if it is supported by the record. *938 State v. Taylor, 02-1063, p. 11 (La.App. 5 Cir. 2/25/03), 841 So.2d 894, 900, writ denied, 03-0949 (La.11/7/03), 857 So.2d 516.
When the trial judge imposed defendant's original sentences, she stated, "Mr. Carter, what you did was inexcusable. There is no doubt in this Court's mind, and, obviously, not in the jury's mind either, that you committed the crime of forcible rape and that you also committed the crime of aggravated crime against nature." The prosecutor also informed the trial judge that defendant had a prior conviction for contributing to the delinquency of minors, which was reduced from a charge of molestation of juveniles. The prosecutor further advised the court that defendant also had four pending counts of indecent behavior with juveniles.
Regarding defendant's fifteen-year sentence for aggravated crime against nature, we note it is the maximum term allowed under La. R.S. 14:89.1. Maximum sentences are generally reserved for the most serious violators of the relevant statute, and for the worst type of offenders. State v. Fletcher, 03-60, p. 7 (La.App. 5 Cir. 4/29/03), 845 So.2d 1213, 1219.
In State v. Tate, 506 So.2d 546 (La.App. 1 Cir.1987), writ denied, 511 So.2d 1152 (La.1987), the First Circuit held that a sentence of fifteen years for aggravated crime against nature was not excessive due to the defendant's criminal history and the circumstances of the offense. In State v. Lamark, 584 So.2d 686 (La.App. 1 Cir.1991), writ denied, 586 So.2d 566 (La.1991), the court approved of a fifteen-year sentence for aggravated crime against nature where the defendant was also convicted of aggravated rape and aggravated burglary, and repeatedly threatened the victim's life.
In this case, the victim was a child, who stated that she trusted defendant before this incident. Further, defendant has one conviction for an offense against a juvenile and four pending charges against juveniles, which are sufficient aggravating factors to justify imposition of the maximum sentence. We conclude that defendant's sentence for aggravated crime against nature is not constitutionally excessive.
Defendant also argues that the trial court failed to follow the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 with respect to his sentence for aggravated crime against nature. At the hearing on his Motion to Reconsider Sentence, defendant argued that the trial court was influenced in sentencing by evidence she heard in presiding over his trial on other sex offenses, which ended with defendant being acquitted. The judge responded:
Let the record reflect that I heard both trials and certainly, I'm well aware that something  a trial that ended in a not guilty verdict by a jury cannot be considered by the Court in sentencing for a subsequent trial. I believe at the time of sentencing that I well understood that, that this case, this conviction, against a child, against her will, was a heinous crime. This child's life will be changed forever. We don't know in how many ways, but it certainly will be changed forever; and not in a positive way, I can certainly be well aware of that.
Even if the trial judge was influenced by knowledge of offenses for which defendant was acquitted, there was no abuse of discretion. A sentencing judge may consider a defendant's prior convictions as well as past criminal behavior that did not result in a conviction. State v. Packnett, 03-1446, pp. 6-7 (La.App. 5 Cir. 4/27/04), 873 So.2d 789, 792.
While defendant complained in his written Motion to Reconsider Sentence that the trial court failed to consider mitigating *939 factors in sentencing, he did not argue any specific mitigating factors at the time of sentencing. Nor did he argue any at the hearing on the motion. Defendant does not argue, on appeal, any mitigating factors the trial court should have considered under the provisions of La. C.Cr.P. art. 894.1.
La.C.Cr.P. art. 894.1(C) requires the trial court to state for the record the considerations taken into account and the factual basis for imposing sentence. But this Court has held that, if the record contains an adequate basis for the sentence imposed, the trial court's failure to articulate every statutory sentencing provision will not require a remand for re-sentencing. State v. Fortino, 02-708, p. 11 (La.App. 5 Cir. 12/30/02), 837 So.2d 684, 691 writ denied, 03-0251 (La.5/9/03), 843 So.2d 395. We find that the record forms an adequate basis for defendant's sentence for aggravated crime against nature, and conclude, therefore, that defendant's sentence was not statutorily excessive.
Regarding defendant's claim that his habitual offender sentence is constitutionally excessive, we note that the trial judge imposed an enhanced sentence of thirty-seven years, which was the exact sentence imposed for the underlying conviction. As a second felony offender, defendant was exposed to a sentencing range of twenty to eighty years for forcible rape. La. R.S. 14:42.1; La. R.S. 15:529.1 A(1)(a). The imposed sentence of thirty-seven years is mid-range. We find that the sentence imposed was supported by the record and defendant's criminal history and not constitutionally excessive.[7]
Finally, we have reviewed this record as well as the record in defendant's first appeal for errors patent. La.C.Cr.P. art. 920. The trial court did not advise defendant of the two-year prescriptive period for filing an application for post-conviction relief, as per LSA-C.Cr.P. art. 930.8. We, therefore, remand with instructions to the trial court to provide defendant with written notice of the two-year prescriptive period, and to file written proof of said notice in the record. See, State v. Stelly, 98-578, p. 6 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
Second, the defendant was convicted of forcible rape, in violation of La. R.S. 14:42.1, and aggravated crime against nature, in violation of La. R.S. 14:89.1, which are defined by La. R.S. 15:541(14.1) as sex offenses. Further, because the victim was fourteen years old at the time of the offense, defendant is required to register as a child predator. La. R.S. 15:541(9); La. R.S. 15:542.1. In this case, the record does not reflect that the trial court provided the defendant with notification of sex offender registration requirements. Therefore, we remand with instructions to the trial court to send the defendant appropriate written notification of the registration requirements of La. R.S. 15:542.1 and file written proof that defendant received the notice in the record.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED.
NOTES
[1] The trial court also ordered a separate trial on the incidents that juvenile victim, K.B., alleged, which were aggravated rape and aggravated crime against nature. The disposition of those charges is not the subject of this appeal.
[2] In accordance with La. R.S. 46:1844(3), this Court will refer to the juvenile victims and witnesses by their initials to protect the victim's identity. State v. Simmons, 03-20, p. 2 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249, 1251.
[3] On February 2, 2004, this Court remanded defendant's first appeal to the district court for a hearing on the habitual offender bill and a ruling on defendant's Motion to Reconsider Sentence. This Court directed that the transcripts, pleadings, and other documents pertaining to those proceedings be made part of the appellate record. It was further ordered that, upon completion of the proceedings on remand, the record be re-lodged in this Court, and the appeal assigned to the next available docket. Accordingly, defendant's appeal was re-lodged and the record of his first appeal, which was 03-KA-1420, was lodged as an exhibit to this appeal.
[4] In accordance with La. R.S. 46:1844(3), this Court will refer to the victim and her family by their initials to protect the victim's identity. State v. Simmons, 03-20, p. 2 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249, 1251.
[5] When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363, p. 7 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396. Therefore, we will address defendant's second assignment of error first.
[6] Defendant filed a Motion to Reconsider Sentence following his original sentencing, which was heard and denied on February 13, 2004. Defendant is, thus, entitled to a review of his sentence for aggravated crime against nature for constitutional and statutory excessiveness. Under La.C.Cr.P. art. 881.1(E), however, defendant is entitled to a statutory review only as to the issues specifically raised below. The only specific claim defendant made in his written Motion to Reconsider Sentence was that the trial court failed to consider mitigating circumstances. At the hearing on that motion, defendant argued that the judge was adversely influenced by his trial and acquittal, in her court, on separate sex offense charges.

With regard to his sentence for forcible rape, the trial court vacated defendant's original forcible-rape sentence and imposed a habitual offender sentence on March 26, 2004. Defendant neither orally objected to his sentence nor filed a written motion to reconsider his habitual offender sentence. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review only for constitutional excessiveness. La.C.Cr.P. art. 881.1. We will therefore only review defendant's habitual offender sentence for constitutional excessiveness.
[7] See also, State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98), 728 So.2d 14, in which the Fourth Circuit found that the defendant's eighty-year sentence for forcible rape as a second felony offender was not unconstitutionally excessive. The court found that defendant showed no remorse and contended he was innocent because he and the victim engaged in consensual sex. The court further noted that the defendant committed a criminal offense only three months after being released from prison on prior offense, and that he inflicted injury upon the victim.