NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-500

STATE OF LOUISIANA

VERSUS

R.L.J.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 112,880
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and
Billy Howard Ezell, Judges.

AFFIRMED.

Michael Harson
District Attorney
Mark T. Garber
Assistant District Attorney
P.O. Box 3306
Lafayette, LA 70502-3306
(337) 232-5170
Counsel for Plaintiff/Appellee:
     State of Louisiana

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
     **R.L.J.**

**DECUIR, Judge.**

After a jury trial, Defendant, R.L.J., was convicted of one count of forcible rape, a violation of La.R.S. 14:42.1. Defendant was sentenced to ten years at hard labor, with five years to be served without benefit of parole, probation, or suspension of sentence. Defendant's oral motion to reconsider the sentence based on a claim of excessiveness was denied.

Defendant has perfected a timely appeal, raising two assignments of error: He contends the evidence was insufficient to sustain a verdict of forcible rape and the sentence imposed is excessive under the circumstances of the case. For the following reasons, we find there is no merit to either assignment of error and affirm Defendant's conviction and sentence.

The evidence in the record shows that Defendant and the Victim, T.M., lived together on and off for several years. After some problems, however, the Victim obtained an eviction judgment and evicted Defendant from her residence. In the early morning hours of August 2, 2006, Defendant wired the Victim's front door shut, cut the phone lines from the outside the house, and broke into the house through the bedroom window. Threatening that he would kill her while holding a sharp object to her throat, he forced the Victim to have sexual intercourse with him.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Defendant argues that there was insufficient evidence to support the verdict of forcible rape. He argues that the Victim's testimony was false and made in retaliation because he had not moved out of the residence and that there was insufficient evidence that she resisted the sexual intercourse or was prevented from doing so by force or threats of physical violence.

The analysis for a claim of insufficient evidence is well-settled:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The crime of forcible rape is described in La.R.S. 14:42.1(A):

Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

At trial, the Victim testified that she and Defendant had an on and off relationship since 1986. While Defendant had lived with her at the current residence, she had recently obtained an eviction judgment ordering him out of the house. About 2:00 a.m., on the morning of August 2, 2006, shortly after T.M. came home from work, she heard a voice outside the house saying, "I'm going to kill you, bitch." She said she recognized the voice as Defendant's. She testified she tried to call 911, but the phone would not work. She tried to get out of the house by the front door, but she could not get the door open. The Victim testified that when she called out to him that she was going to call the cops, he said "you can't call–you weren't able to call no cop,

because you ain't got no phone." She tried pounding on the front window and yelling to attract attention, but to no avail.

The Victim further stated she could not go out the back door. She had barricaded the door days earlier because Defendant had been coming into the house while she was at work. She testified that she heard the window in a back bedroom break, and Defendant "rushed" her from behind and held something black, pointed, and sharp to her throat. Defendant told her he wanted to get back together. When he ordered her to undress and go into the bedroom, she told him no. The Victim testified that Defendant then told her that "if I would not go in the room, he will kill me, just like my sister got killed," explaining that her sister had been murdered by her husband. She testified that she was forced to submit to his demand: "To save my life, I had to do what he said." After sexual intercourse, Defendant fell asleep, and T.M. managed to get out the front door and across the street to a neighbor's house from where she called the police.

T.M. testified that prior to this night, her brother had nailed the windows in the house closed and barricaded the back door because Defendant had been going into the house. She stated that there was no reason for him to be in the house; all his personal things had been removed.

Robert White, a police officer with Lafayette Police Department, was the first to respond to the 911 call from the Victim. Prior to the Victim going to the hospital, he interviewed her as to what had happened. The sequence of events related to him was essentially the same as what the Victim testified to at trial. The officer looked around the house and saw that the back bedroom window was broken, that there was a clothes hanger wire attached to the front screen door which had been used to fasten

3

the front door shut, and that the phone line was disconnected on the outside of the house. Moreover, the back door had been barricaded.

Brad Robin, a detective with the Lafayette Police Department, also interviewed the Victim on the morning of the incident. He reviewed the crime scene, noting that the windows had been nailed shut. He stated that the Victim told him she had the lock changed on the front door of the house a month prior to the incident. The detective testified that he located Defendant the same morning at "The Well," which he described as "a place where people go to sleep and also obtain food." He testified that he interviewed Defendant, and Defendant admitted that he broke into the house through the window and that he and the Victim had sexual intercourse, though he claimed she consented to the sexual act.

Defendant argues there was no evidence submitted to establish that he was aware of the eviction proceeding. The record discloses, however, that the eviction notice was posted. The front door lock was changed, the windows were nailed shut, and the back door was boarded up. Nevertheless, the question of whether Defendant knew of the eviction was not an issue in the case. In order to convict for forcible rape, the State had to prove only that there was an act of vaginal intercourse, without the lawful consent of the victim, and the victim was prevented from resisting by acts of force or threats of physical violence under circumstances where the victim reasonably believed that such resistance would not prevent the rape. *State v. Clark*, 04-901 (La.App. 3 Cir. 12/8/04), 889 So.2d 471.

Our review of the record reveals sufficient evidence of each element of forcible rape. There was unrefuted testimony that Defendant admitted he broke a window in order to gain entrance into the house and that he had non-consensual sexual intercourse with the Victim by the use of force. The Victim's testimony and

4

corroborating facts support a factual finding of sexual intercourse without lawful consent and threats of violence such that the Victim would have reasonably believed her life was in danger if she did not comply. The front door was wired shut, and the phone line had been cut. Defendant harangued her from outside the house telling her he was going to kill her. He held a sharp object to her throat. She said no when he told her to get undressed, and he told her that he was going to kill her like her sister was murdered unless she complied. She testified she did so out of fear for her life. The Victim's fear of Defendant was evidenced by her dramatic actions of changing the front door lock, nailing her windows shut, and boarding up her back door to keep him out.

Defendant points to *Clark,* 889 So.2d 471, wherein this court reversed a conviction for forcible rape because there was no evidence the victim fought back or was prevented from resisting the act by force or threats of physical violence. The facts in *Clark* were as follows:

> C.T. testified that after Shrimp left with her friend, she locked the house and prepared for bed. She changed from a skirt, shirt, and thong into boxer shorts and a tee shirt to sleep in. She testified that after sleeping for a while she was awakened by the sound of the Defendant coming into her room. He took off his clothes, got in bed with her, and proceeded to have sex with her. She testified that she was "frozen" and did not fight him off, scream to Cole for help, or try to get away. Rather, she pleaded with him to stop and was overpowered by him, a two hundred pound man. She stated that he pinned her down, but he did not threaten her and was not violent with her. She acknowledged she had no bruises or other physical injuries from the incident. The Defendant agreed that he returned to the Ewing house that morning, but he testified the sexual act was consensual and C.T. never asked him to stop. Both agreed the Defendant then cleaned himself up with a towel lying on the floor, kissed C.T. on the forehead, and asked her if he would see her later at a barbecue for the Ewings. He then left.

*Id.* at 473.

5

In *Clark*, this court found the evidence was sufficient to sustain a verdict for the crime of simple rape because of the victim's intoxication. *Clark* is clearly distinguishable from the instant case. In this case, T.M. attempted to escape and call out for help but was prevented from doing so by Defendant's deliberate act of wiring the front door shut and cutting the phone line. In contrast to the *Clark* case, Defendant herein threatened to kill her unless she complied. The intercourse was admitted, the Victim did not consent, and she was prevented from resisting by acts of force by threats of violence.

Considering the testimony and corroborating evidence in this case, and the Victim's reasonable fear for her life if she did not submit to Defendant's demand, we find the elements of forcible rape were proven beyond a reasonable doubt and affirm the conviction.

## ASSIGNMENT OF ERROR NUMBER TWO:

Defendant argues that the sentence imposed was excessive under the circumstances of the case. He further argues that the trial court did not comply with the mandates of La.Code Crim.P. art 894.1.

The offense of forcible rape is punishable by no less than five years imprisonment and no more than forty years at hard labor. La.R.S. 14:42.1. Defendant was sentenced to a term of imprisonment of ten years, one-fourth of the possible sentence that could have been imposed.

> The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. *State v. Johnson,* 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677 (citing *State v. Dorthey*, 623 So.2d 1276 (La.1993)). A sentence is grossly disproportionate if, when the crime and punishment are

6

considered in light of the harm done to society, it shocks the sense of justice. *State v. Lobato,* 603 So.2d 739, 751 (La.1992).

Three factors to be considered in reviewing a sentence for excessiveness are: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same court and other courts. *State v. Tracy,* 02-0227, p. 21 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 516, *writ denied,* 02-2900 (La.4/4/03), 840 So.2d 1213. The trial judge has wide discretion in imposing sentences within the statutory limits, and a sentence will not be set aside if it is supported by the record. *State v. Taylor,* 02-1063, p. 11 (La.App. 5 Cir.2/25/03), 841 So.2d 894, 900, *writ denied,* 03-0949 (La.11/7/03), 857 So.2d 516.

*State v. Carter*, 04-482, pp. 13-14 (La.App. 5 Cir. 10/26/04), 888 So.2d 928, 937-38.

Absent a showing of manifest abuse of discretion by the trial court, a reviewing court may not set aside a sentence. *State v. Guzman,* 99-1528, 99-1753 (La. 5/16/00), 769 So.2d 1158.

The record of the sentencing hearing shows that Defendant was forty-seven years old at the time of trial. He had a criminal record of thirty-four misdemeanor convictions, eight of which involved either battery, assault, or violation of a protective order, and a prior felony conviction for distribution of cocaine. The present conviction, the sentencing court noted, involved acts of violence.

In *State v. Collins,* 04-1441 (La.App. 3 Cir. 3/2/05), 896 So.2d 1265, *writ denied*, 05-1334 (La. 1/9/06), 918 So.2d 1040, this court affirmed a thirty-year sentence for a conviction of forcible rape. The offender entered a neighbor's apartment under the pretext of borrowing her phone. He forced her into the bedroom and, after slapping and choking her, he had sexual intercourse with her. Similarly, the second circuit did not find a sentence of twenty years imposed on a defendant who was convicted of forcible rape to be excessive. In *State v. Simpson*, 39,268 (La.App. 2 Cir. 1/26/05), 892 So.2d 694, the defendant and the victim had been married. One

7

early morning, the defendant forced his way into the victim's home, hid her phone so she could not call for help, threatened to kill her if she did not submit, and raped her.

In the instant case, Defendant acted deliberately and violently when he secured the Victim's front door and cut the phone lines so that she could not escape or call for help. He threatened her with acts of violence, using a threat that was particularly poignant, that of killing her like her own sister was killed. Considering the facts of this case, the nature of the crime, and similar jurisprudence, a sentence of ten years at hard labor does not shock this court's sentence of justice. The sentence imposed does not represent an abuse of discretion and is hereby affirmed.

For the foregoing reasons, the Defendant's conviction and sentence are both affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.