896 So.2d 1129 (2005)
STATE of Louisiana
v.
Leonard R. MUTZ, Jr.
No. 04-KA-1072.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 2005.
*1131 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Juliet Clark, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On August 14, 2001, the Jefferson Parish District Attorney filed a bill of information charging defendant, Leonard Mutz, Jr., with sexual battery upon R.H., in violation of LSA-R.S. 14:43.1.[1] The defendant pled not guilty at arraignment. On March 21, 2002, the State filed a notice of intent to use evidence of other crimes. After a hearing, the trial judge took the matter under advisement, and on March 28, 2002, the trial court granted the State's motion. Defendant was tried before a six-person jury, which returned a verdict of guilty as charged on January 31, 2003.
Defendant filed a motion for new trial, which was denied by the trial judge on April 7, 2003. On that same date, the trial judge sentenced defendant to serve four years at hard labor. This timely appeal follows.

FACTS
At trial, R.H. testified that she fell asleep on a couch in the early morning hours of June 3, 2001 at the Office Lounge located on the Westbank Expressway where she worked as a bartender. When she awoke, she found herself on her stomach, with her pants and underwear pulled down. Defendant was behind her, with his penis pushing against her "anal area."
Approximately one week earlier, R.H. first met defendant, whom she knew as "Ging Ging," through Christy Brumfield and Mike Roussell, with whom R.H. was living. R.H. said she never dated defendant or had any other social contact with him. However, during the week preceding June 3, 2001, defendant began showing up at the Office Lounge and Murphy's, another lounge where R.H. bartended.
On June 2, 2001, after working at Murphy's until approximately 7:00 p.m., R.H. went home for a few hours. Around 2:00 a.m. on June 3, 2001, R.H. went to pick up her friend, Casey, who worked at a lounge on Lafayette Street. Because Casey and her boyfriend were having an argument, R.H. and Casey left the lounge around 2:30 a.m. However, Casey's boyfriend ran out in front of R.H.'s car and smashed into the windshield. Casey exited the car, and R.H. went to the Office Lounge.
After talking about the accident to some police officers at the Office Lounge, R.H. had several drinks. She estimated that, around 4:00 a.m., she fell asleep on the couch in the bar. George Parks, the owner of the lounge, locked up and left at approximately 7:30 a.m. Parks testified that R.H. was sleeping on the couch, and *1132 that there were no other patrons in the lounge when he left. Parks went home to get some sleep before he had to return to the lounge in a few hours.
Between 7:00 and 7:30 a.m., R.H.'s friend, Casey, went to the apartment where R.H. lived. Casey related to Mike Roussell the events that had occurred earlier in the morning involving her boyfriend, and she told Roussell that she could not find R.H. At 8:30 a.m., defendant showed up at the apartment, just to "hang out." Since no one had heard from R.H., defendant volunteered to look for her. According to Roussell, defendant said he would go to Murphy's and the Office Lounge, and he left between 9:00 and 9:30 a.m.
Sometime between 9:00 and 11:00 a.m., R.H. woke up on her stomach with her pants and underwear around her knees. She felt the "pressure" of a penis and "almost penetration" on her "anal area." R.H. rolled out from under defendant and saw defendant pulling up his pants. R.H. pulled up her pants and ran out of the lounge. She went to the residence where Parks stayed with his girlfriend and another person, O'Neal Boudreaux, who answered the door. R.H. told Boudreaux what had happened, and he called Parks, who was already at the lounge by that time.
Parks looked around, but did not see anyone else in the lounge. Parks testified that, when entering the lounge that morning, he discovered that the doorknob was locked, but the dead bolt was not. Parks found this to be strange, because he had recalled locking the deadbolt, but not the doorknob. Upon closer inspection, Parks observed that the wood around the striker plate for the deadbolt had been gouged out of the jamb.
Several days later, on June 11, 2003, R.H. reported the incident to the police. R.H. explained the delay in reporting the incident by the fact that she was in shock and was working a great deal. Officer Guidry of the Gretna Police Department was the first officer who recorded the complaint. He also interviewed Parks and observed the pry marks on the door jamb. The complaint was transferred to Detective Lawrence, who obtained a taped statement from R.H. Detective Lawrence also observed the pry marks, and said that it was very easy to unlock the deadbolt. According to Detective Lawrence, he was able to unlock the door by slipping a pocket knife in between the jamb and the door and sliding the bolt backwards. Detective Lawrence also testified that the couch area where R.H. had been sleeping was visible by standing outside and looking through a window. Detective Lawrence showed R.H. a photographic lineup, and R.H. positively identified defendant as the perpetrator. She also identified defendant at trial.

DISCUSSION
On appeal, defendant contends that the trial court erred in allowing the State to present evidence of other crimes, specifically an incident involving defendant's sister-in-law, C.R.[2] According to defendant, the evidence was inadmissible under LSA-C.E. 404(B)(1)[3] because it was not independently *1133 relevant. Defendant also contends that the other crimes evidence was not substantiated, and that its admission was not harmless.
The State responds that the offense involving C.R. was admissible pursuant to LSA-C.E. art. 412.2. The State further responds that the event was substantiated through C.R.'s testimony, that the evidence was relevant to the defendant's propensity to sexually assault women who have fallen asleep or passed out after consuming alcohol, and that it was not unduly prejudicial.
On March 21, 2002, the State filed a notice of intent to use evidence of other crimes to show defendant's knowledge, intent, guilty knowledge, system and motive. In its notice, the State indicated it planned to introduce evidence that defendant was arrested for simple rape of his sister-in-law on April 6, 2000 while she was intoxicated and passed out on April 5, 2000. At a hearing on March 21, 2002, the State presented the testimony of the officer who investigated the incident involving C.R. The State informed the court that C.R. would testify at trial, and also submitted R.H.'s statement regarding the incident in this case. After taking the matter under advisement, the trial judge ruled that the evidence was admissible on March 28, 2003.
At trial, the State presented the testimony of C.R., who told the jury that she attended a family function on April 5, 2000 at the home of her sister and defendant, who was her sister's husband. After consuming several alcoholic beverages, she fell asleep in the master bedroom. C.R. said that she was not drunk, but admitted she was "under the influence of alcohol" before lying down. C.R. awoke to find herself repositioned in the bed, with her feet on the floor. Her dress was above her waist and her panties had been moved to the side. Defendant was standing in front of her, pulling down his shirt and zipping his pants. C.R. asked defendant what he was doing. Defendant walked into the bathroom without responding. C.R. experienced soreness and bleeding in her "anus area." C.R. called the police and went to the hospital that night. C.R. acknowledged that she had never been to court on the allegations involving defendant.
At the time of the hearing in 2002 and at the time of defendant's trial in 2003, LSA-C.E. art. 412.2 provided in pertinent part:
A. When an accused is charged with a crime involving sexually assaultive behavior ... evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
LSA-C.E. art. 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue *1134 delay, or waste of time." Thus, evidence of a prior sexual offense is admissible if relevant and if the probative value outweighs the prejudicial effect. State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218. Rulings on the admissibility of evidence will not be disturbed, absent an abuse of discretion. Id.
In the present case, the trial court did not abuse its discretion in admitting evidence of the incident involving C.R. The testimony of C.R. established, at a minimum, that defendant committed a sexual battery upon her. In 2001, sexual battery was defined in LSA-R.S. 14:43.1(A), in pertinent part, as follows:[4]
[T]he intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender[.]
Defendant claims that C.R.'s testimony did not substantiate the occurrence of the other crimes evidence by clear and convincing evidence.
Prior to the enactment of LSA-C.E. 412.2, State v. Prieur, 277 So.2d 126 (La.1973) required a showing by clear and convincing evidence that defendant committed the other crimes evidence. LSA-C.E. art. 1104, enacted in 1994, provides that the burden of proof in Prieur hearings in Louisiana conform to that required by Federal Rules of Evidence, Rule 404. The Louisiana Supreme Court has declined to address the question of how Article 1104 affects the burden of proof with regard to other crimes evidence.[5] However, this Court has recognized the preponderance of the evidence standard as the burden of proof in a Prieur hearing. See State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165. Regardless of which standard is used, the record in this case shows that the State presented sufficient evidence to meet either burden of proof. C.R. gave detailed and uncontradicted testimony regarding the incident alleged in the written notice. Thus, the other crimes evidence was established by a preponderance of the evidence, as well as by clear and convincing evidence.
Further, the trial court did not err in its determination of relevance. In State v. Olivieri, supra, this Court held that evidence of the defendant's prior conviction for forcible rape was admissible under LSA-C.E. 412.2 in his aggravated rape prosecution. In Olivieri, the defendant forced the victim, an adult woman, into her car, drove her to a remote location, and raped her in the back seat of her car. Id. at 209-210. The victim of the prior offense, who was also an adult woman, testified that the defendant forced her into her car and raped her in the backseat of her car. Id. at 215-216. The Olivieri court concluded that the prior conviction was *1135 relevant to show defendant's propensity to sexually assault women who tended to matters near their vehicles and to show the defendant's attempt to kidnap women and drive off in their vehicles. Id. at 218-219.
Although the Olivieri court observed that the evidence was prejudicial for the same reason that it was probative, the Court concluded that the probative value outweighed its prejudicial effect. The court pointed out that there was no indication the other crimes evidence misled or confused the jury and the evidence was presented in an orderly manner.
Turning to the present case, the incident involving C.R. is highly relevant to show defendant's propensity to sexually assault women by placing his penis on or in their anuses when the women have fallen asleep after becoming intoxicated. For the same reason that the evidence is probative, the evidence of the prior sexual conduct is prejudicial to defendant. However, as observed by Olivieri, by enacting Article 412.2, the Louisiana Legislature evidently saw a need to lower the obstacles to admitting propensity evidence in sexual assault cases. Id. at 219. Considering the purpose behind Article 412.2, we find that the evidence was not so prejudicial so as to warrant exclusion, because there is no indication that the other crimes evidence confused or misled the jury and the evidence was presented in an orderly manner, with evidence of the prior sexual conduct being presented at the beginning of the trial, clearly and succinctly through the testimony of the victim of that offense. Further, the trial court gave a limiting instruction at the beginning of C.R.'s testimony and again during jury charges. Thus, there was little chance the jury could confuse the facts of the two crimes. Based on the foregoing, we conclude that the trial judge did not err in admitting evidence about the incident involving C.R.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following errors require corrective action.
The minute entry/commitment reflects that the trial judge properly advised defendant of the prescriptive period for filing post-conviction relief, whereas the transcript is silent. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, because the transcript indicates that the trial judge did not advise defendant of the prescriptive period for filing post-conviction relief, as required by LSA-C.Cr.P. art. 930.8, we remand and order the trial court to inform defendant of this prescriptive period by sending him written notice within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Miller, 02-729 (La.App. 5 Cir. 12/30/02), 836 So.2d 614, 618, writs denied, 03-0200 (La.10/10/03), 855 So.2d 326, and 03-0503 (La.10/10/03), 855 So.2d 329.
It is further noted that defendant was charged with sexual battery, which is defined as a sex offense by LSA-R.S. 15:541(14.1). LSA-R.S. 15:540, et seq. require registration of sex offenders, and LSA-R.S. 15:543(A) requires the trial court to notify a defendant of the sex offender registration requirements of LSA-R.S. 15:542.
In the present case, the trial judge stated at sentencing that defendant would be required to register as a sex offender. However, the record does not reflect that defendant was informed in writing of the registration requirements as provided by LSA-R.S. 15:543(A). This Court has held *1136 that this omission warrants a remand for written notification. See State v. Stevenson, 00-1296 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165, 1166-1167. Accordingly, we remand and order the trial court to inform defendant of the sex offender registration requirements as provided in LSA-R.S. 15:543(A), by sending appropriate written notice to the defendant, within ten days of this Court's opinion, and to file written proof in the record that defendant received such notice. State v. Stevenson, supra.

DECREE
For the reasons set forth above, we affirm defendant's conviction and sentence. We remand the matter and order the trial court to send written notice to defendant of the prescriptive period for filing post-conviction relief, as required by LSA-C.Cr.P. art. 930.8, and the sex offender registration requirements, as provided by LSA-R.S. 15:543(A).
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The victim is identified by her initials because she was the victim of a sex crime. See LSA-R.S. 46:1844(W).
[2] Just as with R.H., the victim is identified by her initials because she was the victim of a sex crime. See LSA-R.S. 46:1844(W).
[3] LSA-C.E. art. 404(B)(1) provides:

B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
[4] Acts 2003, No. 232, § 1 rewrote paragraph A as follows: "Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender."
[5] See State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916, 921, fn. 5.