922 So.2d 1195 (2006)
STATE of Louisiana
v.
Edward C. PATTERSON.
No. 05-KA-560.
Court of Appeal of Louisiana, Fifth Circuit.
January 31, 2006.
*1197 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Frank Brindisi, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, and SAM A. LeBLANC, III, Pro Tempore.
WALTER J. ROTHSCHILD, Judge.
A Jefferson Parish grand jury returned an indictment charging the defendant, Edward C. Patterson, with aggravated rape, a violation of LSA-R.S. 14:42. The defendant pled not guilty at arraignment. After a hearing, the trial court granted the State's motion to introduce, pursuant to LSA-C.E. art. 412.2, evidence that defendant had previously been convicted of simple rape. The defendant proceeded to trial on November 18, 2004 before a twelve-person jury, which unanimously found the defendant guilty as charged.
The defendant filed a motion for post-verdict judgment of acquittal and a motion *1198 new trial, which were denied. Thereafter, the trial judge sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This timely appeal follows.

FACTS
N.W., who was in the eleventh grade at the time of trial, testified that she had turned 14-years-old in May of 2002. She testified that the defendant raped her on June 5, 2002 while she was at home alone at her residence located at 2024 Pailet in Harvey.[1] On the previous evening, the defendant had stopped by the residence and visited with the victim's mother, Ms. W., and Ms. W.'s female cousin. Around 9:00 p.m., the victim arrived home from swimming at a friend's house. Shortly thereafter, Ms. W. and her cousin left the house with the defendant. According to Ms. W., the plan was for the defendant to obtain crack cocaine in exchange for sex with the two women at a hotel. The defendant drove to the Eastbank of New Orleans, near University Hospital and asked the two women to get out of the car because the crack supplier did not want anyone else to come to his house. After a while, the two women became uncomfortable and decided to hitchhike back to the Westbank. Before doing so, however, Ms. W. telephoned her sister's house and asked her nephew, Kendrel, to check on N.W.
When Kendrel arrived at the house, he knocked on the door, but didn't get an answer. Kendrel peered through the bedroom window and saw a man on top of a female "humping" her. Kendrel struck the window, trying to get someone to answer the door. It was sometime after midnight when Ms. W. arrived at the house. Kendrel was beating on the door of the house. Kendrel informed Ms. W. what he had seen. Ms. W. went to her bedroom window and saw the defendant on top of her daughter, holding her legs up. According to Ms. W., N.W. was screaming. When Ms. W. unlocked the front door and entered the house, she saw the defendant, who was naked, come running out of the room. Ms. W. went to comfort her frightened daughter, who was not wearing any clothes. Kendrel followed the defendant, who had his clothes in his hand, and asked him where he was going. The defendant dropped his clothes and a knife. He picked up his clothes and the knife, which he pointed at Kendrel, threatening to kill him if Kendrel came near. Then, the defendant drove off in his car and the police were called. Deputy Cade was one of the responding officers to the victim's residence. It was stipulated that Deputy Cade would testify if called that his report indicated that N.W. stated that the defendant put his penis into her vagina and raped her until her mother came home.
At trial, N.W. explained the events that occurred following her mother's departure. After her mother left, she took a bath, put on her nightclothes, and lay in her mother's bed. She heard a knock on the door and saw that the defendant was there. He told her that her mother was down the street and was on her way to the house. Because N.W. had seen him there earlier with her mother, she allowed the defendant to enter the house. He went to the restroom and she went back to her mother's bedroom to sleep. When the defendant exited the bathroom, he was naked. He asked her if she wanted to have sex in exchange for $100, and she said no. The defendant held a knife to her throat and told her to remove her clothes. He told her that he would kill her if she screamed. *1199 N.W. said she did not scream because she was afraid that he would kill her. After she removed her clothes, the defendant told her to get on top of him, but changed his mind and got on top of her. While holding the knife to her throat, he held her legs up and tried to force his penis inside of her vagina. When she asked him why he was doing this to her, he replied that her mother had "sold" her to him for $100 worth of crack. N.W. said she did not believe him and was crying and squirming. N.W. said she heard Kendrel outside, but the defendant told her not to say anything. N.W. tried to find the knife that her mother usually kept under her pillow, but it was not there. The defendant attempted to make her kiss him, but she told him that she did not know how to kiss. N.W. testified that defendant had difficulty entering her vagina. However, she said that his penis went approximately one inch inside of her vagina. She also said that she was a virgin until that day.
At trial, Ms. W. acknowledged that she had omitted telling the police that she had gone across the river with the defendant to obtain crack. She said that she had since turned her life around and decided to reveal all of these details to the prosecutor a few days before trial. She also denied that she gave the defendant permission to have sex with N.W.
Dr. Caplan, an expert in the fields of Obstetrics and Gynecology, testified that he examined the victim in the early morning hours of June 5, 2002 at Lakeside Hospital. The hospital admission form was introduced into evidence. According to the nurse's observation note, the victim related that she did not think the perpetrator "went in. He couldn't get it in." Dr. Caplan testified that the victim was visibly upset when he interviewed her. While she initially answered negatively when Dr. Caplan asked if she was penetrated, she immediately answered that she really did not know. Dr. Caplan said that N.W. told him she did not know if the perpetrator ejaculated, but stated that the perpetrator was not wearing a condom. According to Dr. Caplan, the victim's exterior genitalia appeared normal and appropriate for a 14-year-old girl. Dr. Caplan inspected the opening into the vagina, noted that there were no visible tears, and noted it appeared "virginal." However, Dr. Caplan did not perform a full pelvic examination because the victim did not allow it. Dr. Caplan observed a scratch on the victim's neck, which the victim said was from a knife. According to Dr. Caplan, the mark appeared to be consistent with having been made by a knife.
Later that day, Detective Zanotelli interviewed the victim, her mother, and Kendrel. Kendrel supplied the police with the license plate number of the vehicle the defendant was driving. The police compiled a photographic lineup containing the defendant's photograph, and all three witnesses positively identified defendant. Thereafter, the defendant was arrested and he gave a recorded statement to the detective. Defendant said that he had a consensual encounter with N.W. while he was at the house and that Ms. W. and the female cousin were also there at the time. According to defendant, Ms. W. and N.W. told him she was 18-years-old and Ms. W. said that he could have sex with N.W. However, defendant said he only kissed N.W. and that he rubbed on N.W.'s genital area in the bedroom. According to defendant, Ms. W. kept interrupting him by coming into the room to ask him to get her some more crack. Defendant said that both he and N.W. were clothed during the encounter.
The State also presented evidence that defendant had previously pled guilty to the simple rape of T.K., who was 16-years-old *1200 at the time of the offense. At trial, T.K., who was then 28-years-old, testified that 11 years prior to trial, in December of 1993, she and her infant son lived in an apartment complex. She had seen the defendant in the complex before. One day, the defendant approached her and asked her if she knew anyone who wanted to buy a television. She said that she needed a television. The defendant offered to let her have it and pay him later, but she declined. The next time she saw him was on the night she was raped. She had just entered her apartment after taking the garbage out. The defendant shoved her into the apartment and raped her at gunpoint on the floor. He kept referring to her as his girlfriend and said that he would help her out.
At trial, the defendant, who was 29-years-old in June of 2002, denied that he had sexual intercourse with N.W. Rather, he testified that he had the sexual relations described in his statement. Defendant also testified that he routinely sold crack cocaine for a period of six years up until his arrest in 1993. Defendant also admitted that he was convicted of carnal knowledge of a juvenile involving E.V., who lived in the same apartment complex as T.K. However, he denied that he was selling crack when arrested for the instant offense. When questioned about the incident involving T.K., defendant said they had consensual sex. He also said that he did not know that E.V. was 14-years-old until after he was arrested. Defendant said he pled guilty to simple rape as a strategic decision, since he knew he would be convicted on the carnal knowledge charge. Defendant admitted that the simple rape of T.K. was reduced from an aggravated rape charge.
E.V., who was 26-years-old at the time of trial, was called as a defense witness. E.V. testified that she began having sex with the defendant when she was 14-years-old, but said she told the defendant she was 18. Her mother pressed charges against the defendant upon finding out that E.V. was pregnant. According to E.V., she and the defendant resumed their relationship upon his release from prison. She testified that there was a pending simple battery charge against the defendant arising out of an altercation she and the defendant had.
There were several stipulations at trial, including that blood and saliva samples were taken from N.W. but were not tested; that fingernail scrapings from N.W. were negative for the presence of blood; and that "six pubic combed hairs" were taken from the victim.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in failing to grant the defense's motion for post-verdict judgment of acquittal.

DISCUSSION
The defendant contends that the trial judge erred in denying his motion for post verdict judgment of acquittal because the evidence is insufficient to support his aggravated rape conviction. According to the defendant, the victim's testimony was equivocal on the issue of penetration. Further, defendant emphasizes the lack of any medical evidence to support penetration. The State counters that the evidence is constitutionally sufficient to support defendant's conviction.
The defendant filed a motion for post-verdict judgment of acquittal challenging the sufficiency of the evidence, which the trial court denied. Under LSA-C.Cr.P. art. 821, the question of sufficiency of evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal. See, State v. Ellis, 95-1005 (La. App. 5 Cir.3/26/96), 672 So.2d 1007, 1008.
*1201 The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
In June 2002, aggravated rape was defined in LSA-R.S. 14:42, in pertinent part, as follows:[2]
§ 42. Aggravated rape
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
. . . .
Rape is defined in LSA-R.S. 14:41, in pertinent part, as follows:
§ 41. Rape; defined
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
(Emphasis added).
. . . .
Defendant maintains that there was no credible evidence of penetration. In support of his argument in this assignment, defendant points to different responses of the victim, the lack of medical evidence of penetration and to Dr. Caplan's testimony that he found the victim's vagina to be "virginal." Under these circumstances, defendant contends that no rational trier of fact could have found him guilty beyond a reasonable doubt.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66, 79, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243 (La.App. 5 Cir.11/10/99), 750 So.2d 1036, 1045, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and writ denied, 00-0150 (La.6/30/00), 765 So.2d 1066.
We find that the evidence is sufficient to support defendant's conviction. At trial, the victim testified that the defendant raped her. She further testified that the *1202 defendant did not fully penetrate her, but that his penis entered her vagina by an "inch." There was also a stipulation that the first responding officer's report indicates N.W. said that the defendant had raped her until her mother came home. While the victim's responses to the nurse and the doctor are not as clear as her testimony on the issue of penetration, it is reasonable to conclude that her lack of clarity was due to her inexperience with sexual intercourse.
Additionally, the defense thoroughly explored N.W.'s responses to Dr. Caplan, the nurse and to the police. N.W. said that she told Dr. Caplan she was not sure whether the defendant had penetrated her, but did not tell that to the nurse. Further, she said she did not remember telling the first responding officer that the defendant raped her until her mother came home. The defense also cross-examined her extensively on the details of the encounter with the defendant, during which time the victim began to cry.
The victim's testimony is not irreconcilable with the physical evidence. Dr. Caplan testified that he characterized N.W.'s hymen as "virginal," but explained that he used that terminology because of the size of the opening. Dr. Caplan cautioned that there was no certain correlation between the size of this part of the female genitalia and sexual activity.
In State v. Tapps, 02-0547 (La.App. 5 Cir.10/29/02), 832 So.2d 995, 1001, writ denied, 02-2921 (La.4/21/03), 841 So.2d 789, this Court held that the juvenile victim's testimony alone, even absent any additional physical evidence, was sufficient to establish the elements of the offense of forcible rape. See also, State v. Hubbard, 97-916 (La.App. 5 Cir.1/27/98), 708 So.2d 1099, writ denied, 98-643 (La.8/28/98), 723 So.2d 415, where this Court held the evidence was constitutionally sufficient to prove the element of penetration where the victim testified that the defendant made her "have sex" with him and answered affirmatively when asked whether the defendant raped her. Compare, State v. Bruce, 577 So.2d 209 (La.App. 1 Cir. 1991), writ denied, 580 So.2d 667 (La. 1991), cert. denied, 502 U.S. 1003, 112 S.Ct. 636, 116 L.Ed.2d 654 (1991), where the child victim's testimony was insufficient evidence of molestation of a juvenile where the child's testimony consisted of one-word answers to specific, leading questions.
Further, the victim's testimony was not the sole evidence presented by the State. The testimony of Kendrel and the victim's mother corroborated the victim's testimony that the defendant was naked, which diametrically opposed the defendant's version of the events. And, Dr. Caplan observed a scratch on N.W.'s neck consistent with having been made by a knife. A photograph of the victim's neck was introduced into evidence.
In this case, the defense was able to explore any discrepancies in the victim's account of the events through cross-examination. Further, the defense exhaustively cross-examined Ms. W. and Kendrel on their past criminal conduct. In particular, Ms. W. admitted that she often traded sex for crack. While Kendrel admitted on direct examination that he had a prior conviction for possession of marijuana and a pending charge for distribution of cocaine, he was confronted with a bill of information showing that he had an additional pending charge of distribution of cocaine within 1,000 feet of a school.
The jury was called upon to evaluate the credibility of the witnesses and obviously resolved any credibility determinations in the State's favor. The jury also apparently believed the victim's *1203 version of the events over the defendant's version. It is well-settled that where there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact. State v. Price, 94-214 (La. App. 5 Cir.1/31/95), 650 So.2d 360, 363. A reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Wallace, 00-1745 (La.App. 5 Cir.5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297. Viewed in the light most favorable to the prosecution, we conclude that the evidence established beyond a reasonable doubt that the defendant was guilty of aggravated rape.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court erred in failing to grant the defense's motion for new trial because evidence of a prior crime was erroneously allowed before the jury.

DISCUSSION
The defendant claims that the trial judge should have granted his motion for new trial filed on the basis that the defendant's prior rape conviction was erroneously admitted. The State responds that the trial judge did not err in admitting the evidence.
LSA-C.Cr.P. art. 851 provides in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
. . . .
2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error[.]
The ruling on a motion for new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only where there is a clear showing of abuse of that discretion. State v. Badeaux, 01-618 (La.App. 5 Cir.11/27/01), 802 So.2d 905, 908, writ denied, 01-3403 (La.10/4/02), 826 So.2d 1121.
LSA-C.E. art. 412.2 provides for the introduction of evidence in sex offense cases as follows:
Art. 412.2. Evidence of similar crimes, wrongs, or acts in sex offense cases
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.
LSA-C.E. art. 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially *1204 outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Thus, under LSA-C.E. art. 412.2, evidence of a prior sexual offense is admissible if relevant and if the probative value outweighs the prejudicial effect. State v. Olivieri, 03-563 (La.App. 5 Cir.10/28/03), 860 So.2d 207, 218. Rulings on the admissibility of evidence will not be disturbed, absent an abuse of discretion. Id.
In the present case, we fail to find that the trial court abused its discretion in admitting evidence of the incident involving T.K. In State v. Olivieri, this Court held that evidence of the defendant's prior conviction for forcible rape was admissible under LSA-C.E. art. 412.2 in his aggravated rape prosecution. In Olivieri, the defendant forced the victim, an adult woman, into her car, drove her to a remote location, and raped her in the back seat of her car. Id. at 209-210. The victim of the prior offense, who was also an adult woman, testified that the defendant forced her into her car and raped her in the backseat of her car. Id. at 215-216. The Olivieri court concluded that the prior conviction was relevant to show defendant's propensity to sexually assault women who tended to matters near their vehicles and to show the defendant's attempt to kidnap women and drive off in their vehicles. Id. at 218-219.
Although the Olivieri court observed that the evidence was prejudicial for the same reason that it was probative, the Court concluded that it was not so prejudicial as to warrant its exclusion. Olivieri pointed out that there was no indication the other crimes evidence misled or confused the jury and the evidence was presented in an orderly manner. Accord, State v. Mutz, 04-1072 (La.App. 5 Cir.2/15/05), 896 So.2d 1129, 1135.
Turning to the present case, the incident involving T.K. is highly relevant to show the defendant's lustful disposition toward teenage girls. It also shows his propensity to sexually assault teenage girls while armed with a dangerous weapon while they are home with no other adult present.[3] For the same reason that the evidence is probative, the evidence of the prior sexual conduct is prejudicial to defendant. State v. Olivieri, 860 So.2d at 219. However, as observed by Olivieri, by enacting Article 412.2, the Louisiana Legislature evidently saw a need to lower the obstacles to admitting propensity evidence in sexual assault cases. Id. at 219. Considering the purpose behind Article 412.2, we fail to find that the evidence was so prejudicial so as to warrant its exclusion because there is no indication that the other crimes evidence confused or misled the jury, the evidence was presented in an orderly manner, with evidence of the prior sexual conduct being presented at the end of trial, clearly and succinctly through the testimony of the victim of that offense. Further, the trial court gave a limiting instruction on the other crimes evidence during the final jury charges. Thus, there was little chance the jury could confuse the facts of the two crimes.
The defendant asserts that the present case is distinguishable from State v. Mutz, supra, because the trial judge failed to give a limiting instruction after T.K.'s testimony. However, while the defendant herein asked for a limiting instruction at the conclusion of the defense's case, he did not ask for one at the conclusion of *1205 T.K.'s testimony. In fact, the defendant stated that he had assumed the State would call T.K. as a State's rebuttal witness and planned to ask for a limiting instruction at that time. Because the defendant failed to timely request a limiting instruction, he cannot complain on appeal that the trial judge failed to give such an instruction. See, State v. Nguyen, 04-321 (La.App. 5 Cir.9/28/04), 888 So.2d 900, 910, writ denied, 05-0220 (La.4/29/05), 901 So.2d 1064, where this Court concluded that, because defendant did not make a timely objection, he did not properly preserve the issue for appellate review and, therefore, this Court was precluded from addressing this issue.
Based on the foregoing, we fail to find that the evidence was improperly admitted. As such, we conclude that the trial judge did not err in denying the motion for new trial made on this basis.
This assignment has no merit.

ERROR PATENT DISCUSSION
The defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The State points out in its brief that the record reflects that the trial judge failed to provide complete advice on the post-conviction relief period and that the judge failed to provide notice of the defendant's sex offender registration. The following matters were discovered.
It is noted that there is a discrepancy between the commitment and the transcript, because the transcript reflects that the trial judge properly notified the defendant of the prescriptive period for filing post-conviction relief, whereas the while the transcript does not. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
In addressing this type of error, this Court has remanded the case to the district court and ordered it to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record. See, State v. George, 99-887 (La.App. 5 Cir.1/4/00), 751 So.2d 973, 975.
It is also noted that the record does not reflect that defendant was notified of the sex offender registration requirements. Defendant's conviction of aggravated rape is defined as a sex offense by LSA-R.S. 15:541(14.1). LSA-R.S. 15:542 outlines mandatory registration requirements for sex offenders. In addition, LSA-R.S. 15:543(A) mandates the court to notify a defendant charged with a sex offense in writing of the registration requirements of LSA-R.S. 15:542, as follows:
§ 543. Offender notification
A. The court shall provide written notification to any defendant charged with a sex offense of the registration requirements of R.S. 15:542. Such notice shall be included on any guilty plea forms and judgment and sentence forms provided to the defendant.
This Court has held that, like the omission of the LSA-C.Cr.P. art. 930.8 notification, this omission warrants a remand for written notification and we generally remand with an order for the trial judge to inform defendant of the registration requirements as provided in LSA-R.S. 15:543(A), by sending appropriate written notice to the defendant, within ten days of *1206 this Court's opinion, and to file written proof in the record that defendant received such notice. See, State v. Stevenson, 00-1296 (La.App. 5 Cir.1/30/01), 778 So.2d 1165, 1166-1167.
LSA-R.S. 15:542.1, entitled "Registration of sexually violent predators and child predators," provides that "[a]ny person convicted of a sex offense as defined in R.S. 15:541(14.1) or of a criminal offense against a victim who is a minor as defined in R.S. 15:541(9) after July 1, 1997, shall have the duty to register and report under the provisions of this Chapter." (Emphasis as found in the original.) Further, LSA-R.S. 15:542.1(C) provides for the notification of the registration requirements as follows:
C. Notice to the offender. If a person who is required to register under this Section is released from prison, or placed under parole, supervised release, or probation, a Department of Public Safety and Corrections officer, or the court if the offender is not placed in the jurisdictional custody of the Department of Public Safety and Corrections, shall:
(1) Inform the person of the duty to register and report, and obtain the information required for such registration.
Thus, 15:543(A) requires the court to notify a defendant charged with a sex offense of the registration requirements of R.S. 15:542, while the predator registration statute, 15:542.1(C) requires, among other things, notification by the Department of Corrections, upon release, or the court, when the offender is not placed in the jurisdictional custody of the Department of Public Safety and Corrections.
In State v. Thompkins, 04-1062 (La. App. 5 Cir.2/15/05), 896 So.2d 1165, the Court recognized that, until recently, our published decisions had remanded for the trial court to provide notice of the general sex offender registration requirements contained in LSA-R.S. 15:542, as required by LSA-R.S. 15:543(A), even when the victim was a minor where the defendant was sentenced to hard labor.[4] The Thompkins court further noted that these decisions are silent as to trial court's duty to notify a defendant who is convicted of a qualifying offense under LSA-R.S. 15:542.1 of his registration requirements as a child predator. Thompkins, 896 So.2d at 1170-1172.
The Thompkins court observed that the recent decisions of State v. Carter, 04-482 (La.App. 5 Cir.10/26/04), 888 So.2d 928 and State v. Myles, 04-434 (La.App. 5 Cir.10/12/04), 887 So.2d 118 had required the trial court to notify the defendants of the registration requirements of the predator registration statute, LSA-R.S. 15:542.1. The Thompkins court concluded that for defendants convicted of offenses referred to in LSA-R.S. 15:542.1, it appeared Carter and Myles had expanded the trial court's duty to provide notification of the registration requirements of LSA-R.S. 15:542.1. As such, the Thompkins court remanded the matter for the trial judge to provide written notice of the general sex offender registration provisions of LSA-R.S. 15:543 and the provisions of LSA-R.S. 15:542.1. Id. at 1172. Accord, State v. Turner, 05-75 (La.App. 5 Cir.5/31/05), 904 So.2d 816, 825.

DECREE
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant, Edward C. Patterson, is hereby affirmed. The matter is further remanded to the trial court to inform defendant of the correct prescriptive period for post-conviction *1207 relief as contained in LSA-C.Cr.P. art. 930.8. The matter is also remanded for the trial court to provide written notice of the general sex offender registration provisions of LSA-R.S. 15:543 and the child predator registration provisions of LSA-R.S. 15:542.1.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] In accordance with LSA-R.S. 46:1844(W), the initials of the victim and those of certain family members are used herein. The initials of the other two victims of the defendant's prior sex offenses will also be used to protect their identities.
[2] Acts 2003, No. 795, § 1 substituted "thirteen years" for "twelve years" in paragraph (A)(4).
[3] T.K. testified that her infant son was in the apartment, but that no other adult lived there with her.
[4] These cases are cited in Thompkins and are not repeated here.