FREDERICKA HOMBERG WICKER, Judge.
 

 | aThis matter is before us on appeal following the defendant’s, Crystal Reed’s, guilty pleas and sentences to three counts of second degree kidnapping in violation of La. R.S. 14:44.1 and two counts of armed robbery in violation of La. R.S. 14:64. Ms. Reed complains that the trial court erred in denying her motion to recuse the trial judge. She also complains that each of the five sentences the trial court imposed was constitutionally excessive. For the reasons fully discussed herein, we affirm the convictions and sentences.
 

 Facts and Procedural History
 

 In this devastating case, the defendant Crystal Reed, and her co-defendant, Johnny Cheek, embarked on a crime spree in the early morning hours that resulted in a wounded deputy, a murdered deputy, and three people — including an 81-year-old elderly woman and 12-year-old boy — bound and held hostage in their home.
 

 At approximately 1:00 A.M. on Friday, June 16, 2006, Ms. Reed and Mr. 1 oCheek were traveling from Texas to Louisiana on Interstate 10 when St. John the Baptist Parish sheriffs deputy, Detective Monty Adams, attempted to make a traffic stop in Laplace, Louisiana. Mr. Cheek, who was driving, ignored Det. Adams’ warning, accelerated the vehicle, and exited the interstate. After leaving the interstate, Mr. Cheek made a U-turn near a Race-Trac
 
 *76
 
 gas station to face the oncoming officer. Mr. Cheek, thereafter, fired two shots, wounding the detective.
 

 To further evade the police, the defendants escaped down a dark road and turned off their headlights. Assuming they were in the clear, Mr. Cheek turned the vehicle around to head back toward the main highway when they noticed another officer, Commander Octavia Gonzales, approach from behind. Ms. Reed left the vehicle and hid behind a house while Mr. Cheek confronted the officer. After three or four gunshots were fired, Mr. Cheek reappeared pulling Commander Gonzales’ lifeless body.
 

 Before fleeing the murder scene, the defendants confiscated the commander’s duty weapon, back-up weapon, and assault rifle and fled to Kenner — the next town over — in the commander’s expedition where they abandoned it. Knowing their capture was imminent, the defendants orchestrated a scheme to gain entrance into a residence for refuge. While walking through a nearby neighborhood, Ms. Reed, in a rehearsed state of hysteria, frantically knocked on someone’s door at approximately 2:00 A.M. Yelling that she had been the victim of a robbery, Ms. Reed said she needed to use the telephone. Martha Harris, an 81-year-old elderly woman, answered the door. Almost simultaneously with the opening of the door, Mr. Cheek, who had been hiding, pushed the door in, and knocked Ms. Harris to the ground, breaking her hip. Hearing all the commotion, Lori Parham, Ms. Harris’ daughter-in-law, was |4awakened and headed to the front of the house where she saw the defendant, Ms. Reed, standing in the foyer.
 

 Once inside the residence, Ms. Reed inspected the house to ensure that no one other than Ms. Harris, Ms. Parham, and the twelve-year-old boy were present. Finding no one else in the home, Mr. Cheek took Ms. Parham on a scavenger hunt throughout the house looking for telephone cords in order to tie them up. Ms. Parham testified that, while she was forced to help Mr. Cheek look for phone cords, she saw Ms. Reed in her mother-in-law’s bedroom rummaging through her purse for the keys to the car parked outside. The entire ordeal lasted at least 45 minutes.
 

 Once Mr. Cheek restrained the three victims, he and Ms. Reed escaped in Ms. Harris’ vehicle. A police chase quickly ensued, ending when Mr. Cheek crashed into a ditch. Mr. Cheek was able to escape; but Ms. Reed, who was pinned between the air bags, surrendered to the police. Ms. Reed was taken to the Kenner Police Department where she was questioned by Sergeant Royal Burke, a criminal investigator for St. John the Baptist Parish Sheriffs office. She was advised of her rights, signed the Advice of Rights form, and gave a voluntary audio-taped statement about the events that had transpired. Approximately eight hours after being held hostage in her home, Ms. Par-ham positively identified Ms. Reed from a photographic lineup.
 

 Ms. Reed was arrested and charged with three counts of second degree kidnapping in violation of La. R.S. 14:44.1; two counts of armed robbery in violation of La. R.S. 14:64(F); and one count of aggravated burglary in violation of La. R.S. 14:6o.
 
 [1]
 
 She pled not guilty to each of the charged crimes. During the course of the proceedings, Ms. Reed filed a motion to suppress her statement, a |amotion to suppress the photo identification, and a motion to recuse the trial judge.
 

 
 *77
 
 After the motions were denied, Ms. Reed withdrew her not guilty pleas and entered unqualified guilty pleas to each of the five charges. Pursuant to a plea agreement, Ms. Reed was sentenced to 40 years imprisonment at hard labor for each count of second degree kidnapping with the first two years to be served without the benefit of parole, probation, or suspension of sentence. As to both counts of armed robbery, Ms. Reed was sentenced to 50 years at hard labor without the benefit of parole, probation, or suspension of sentence. The sentences were to run concurrently.
 

 Assignments of Error
 

 Ms. Reed avers that the trial court erred in denying the motion to recuse and in imposing excessive sentences.
 

 Discussion
 

 Crosby Plea
 

 It is well settled that a plea of guilty normally waives all nonjurisdictional defects in the proceedings prior to the plea.
 
 State v. Crosby,
 
 338 So.2d 584, 586 (La.1976), citing
 
 State v. Torres,
 
 281 So.2d 451 (La.1973);
 
 State v. Foster,
 
 263 La. 956, 269 So.2d 827 (1972). However, a defendant may be allowed appellate review, if, at the time he enters a guilty plea, he expressly reserves his right to appeal a specific adverse ruling in the case.
 
 State v. Raines,
 
 00-1942 (La.App. 5 Cir. 5/30/01), 788 So.2d 630, 632 citing,
 
 Crosby, supra;
 
 see also
 
 State v. McCoil,
 
 05-658, p. 4 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120, 1122.
 

 In this case, Ms. Reed entered unqualified pleas of guilty. During the colloquy with the trial judge, she stated that, by pleading guilty, she understood that she was waiving the right to a trial by jury; the right to confront her accusers; |fithe right to appellate review; and the right against self-incrimination. She manifested her assent thereto by signing the “Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty” form (Boykin form).
 

 Both the signed form and colloquy in court are void of any suggestion that the guilty pleas were made subject to the reservation of appellate review. Because Ms. Reed did not tender her guilty pleas pursuant to
 
 Crosby,
 
 we find that she did, in fact, waive her right to appellate review of any non-jurisdictional defects.
 

 Motion to Recuse
 

 In her first assignment of error, Ms. Reed contends that the trial court erred in denying the motion to recuse; and because of that error, any decision the trial judge subsequently made in the case is without effect.
 

 Because Ms. Reed did not tender her guilty pleas pursuant to
 
 Crosby,
 
 the question becomes whether the trial judge’s failure to recuse amounts to a jurisdictional defect. In
 
 State v. Sede,
 
 08-547 (La.App. 5 Cir. 2/10/09), 8 So.3d 702, we said that it does not. There, we held, “the failure to recuse is not a jurisdictional defect, and, as such, is waived by an unconditional guilty plea.”
 
 Id.
 
 at 705. Therefore, Ms. Reed is precluded from raising this issue on appeal.
 

 Excessive Sentence
 

 In her second assignment of error, Ms. Reed argues that the trial court erred in imposing excessive sentences.
 

 In this case, Ms. Reed received the maximum sentence of 40 years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence for each of the three counts of second degree kidnapping pursuant to La. R.S. 14:44.1(C). She was also sentenced to 50 years imprisonment at hard labor without the benefit of parole, probation, or 17suspension of sentence for each of the two counts of armed robbery pursuant to
 
 *78
 
 La. R.S. 14:64(B), which carried a maximum sentence of 99 years. All sentences were to run concurrently.
 

 Ms. Reed signed the waiver form which set forth the sentences that she would receive. Moreover, during the colloquy in the district court, the trial judge informed her that if she pled guilty, she would receive the sentences that were ultimately handed down, and she acknowledged that she understood that.
 

 A defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. La.C.Cr.P. art. 881.2(A),
 
 State v. Cross,
 
 06-866, p. 4 (La.App. 5 Cir. 4/11/07), 958 So.2d 28, 30. Therefore, a defendant is precluded from raising a claim of exces-siveness on appeal when the imposed sentence is the product of a plea agreement.
 
 Id.; State v. Jones,
 
 05-840, p. 14 (La.App. 5 Cir. 3/28/06), 927 So.2d 514, 528. Because Ms. Reed’s sentence was imposed pursuant to a plea agreement which she voluntarily agreed to, we find that she is precluded from raising this issue on appeal.
 

 Errors Patent
 

 The record was reviewed for errors patent in accordance with La.C.Cr.P. art. 920, and there is a discrepancy between the commitment and transcript. During the plea proceeding, Ms. Reed was sentenced to 50 years imprisonment at hard labor for each count of armed robbery, without restrictions. However, La. R.S. 14:64(B) provides that, “whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.” While the commitment indicates that the sentence was imposed without benefits, this is not reflected in the transcript.
 

 ^Nevertheless, when a criminal statute requires that all or portion of a sentence be served without the benefit of probation, parole, or suspension of sentence, La. R.S. 15:301.1(A) provides:
 

 [t]he failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence
 
 shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence,
 
 (emphasis added).
 

 In addition, the Louisiana Supreme Court stated, in
 
 State v. Williams,
 
 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799, that in instances where the restrictions are not recited at sentencing, La. R.S. 15:301.1(A) “deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court.” La. R.S. 15:301.1(A) self-activates the correction and eliminates the need to remand for a ministerial correction.
 
 Id.
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The aggravated burglary charge was subsequently dismissed.