ON REHEARING
SUSAN M. CHEHARDY, Judge.
|2On appeal, defendant challenged his convictions and sentences. This Court vacated defendant’s sentences as premature. The State sought rehearing, which we granted. On rehearing, we affirm defendant’s convictions, multiple offender adjudication, and sentences.

Procedural history

As noted previously, on January 22, 2007, the Jefferson Parish District Attorney filed a bill of information charging defendant, Joseph Barnes, with one count of sexual battery in violation of La. R.S. 14:43.1. The State subsequently amended the bill of information, adding a second count of sexual battery, in violation of La. R.S. 14:43.1. Defendant pled not guilty to both counts.
On October 14, 2010, after trial, a six-person jury found defendant guilty as charged on both counts. On October 22, 2010, defendant filed a motion for new trial and a motion for appeal.
On October 28, 2010, the trial judge sentenced defendant to ten years at hard labor without benefit of parole, probation, or suspension of sentence, on each count, concurrent. At sentencing, the trial court also informed defendant of the sex |soffender registration and notification requirements. At that hearing, the State filed a multiple bill of information alleging that relator was a fourth felony offender.[1]
On November 4, 2010, the trial court found defendant to be a fourth felony offender, vacated his underlying sentences, and imposed a concurrent sentence of life imprisonment without benefit of probation or suspension of sentence on each count. Defendant’s motion for appeal was granted on December 1, 2010.
On December 13, 2011, this Court issued an opinion pretermitting discussion of the merits of defendant’s assignments of error, vacating defendant’s sentences, and remanding for a ruling on the motion after discovering that the appellate record lacked a ruling on defendant’s timely-filed motion for new trial. On December 22, 2011, the State of Louisiana sought rehearing of this matter on the basis that the error in the record, which was not attributable to either party, had been corrected. Specifically, there were two errors: first, the minute clerk neglected to accurately record the trial judge’s ruling on the motion in the court minutes for October 25, 2010 and, second, the court reporter neglected to transcribe the argument and testimony from the October 25, 2010 hearing. After determining that the trial *14 judge had ruled on defendant’s motion for new trial, this Court granted rehearing in this matter to address the merits of defendant’s assignments of error.

Facts

In January of 2006, Joseph Barnes[2] stayed with his aunt’s family in Harvey. His aunt was stepmother to two girls, K.B.,[3] who was 16 years old,[4] and D.B., who |4was 18 years old,[5] at that time. Around the end of that month, when neither of the girls’ parents were home, Barnes hugged K.B. and tried to kiss her on the lips. When K.B. rejected Barnes’ advances, he asked if she was uncomfortable and if his actions were inappropriate and K.B. told him they were.
A day or so later, K.B. told her boyfriend that Barnes had tried to kiss her, and her boyfriend encouraged her to tell her father. When K.B. told her father, he was upset and concerned, especially since Barnes was at their house with D.B. at the time. K.B. and her father immediately returned home and Mr. B confronted Barnes.
K.B. went upstairs with her stepmother and her little sister. Because they could hear Mr. B yelling at defendant downstairs, D.B. asked her sister about the argument and K.B. told her that Barnes had tried to kiss her. D.B. then said, “At least that’s all he tried to do to you is kiss you.” D.B. then disclosed that Barnes had hugged her on two occasions, picked her up and instructed her to wrap her legs around his waist, put his hands on her buttocks, and put D.B.’s hand on his clothed and unclothed penis. At K.B.’s encouragement, D.B. went downstairs and told her father that Barnes had been “messing” with her, too. The girls’ father immediately called the police.
At trial, D.B. testified that, on a Sunday night in January 2006, her stepmother left her at home alone with Barnes for about 20 minutes. That night, Barnes approached D.B. and told her that he understood that she could not talk to her parents because they did not understand each other. He assured her that he understood her and was there for her if she needed to talk.
After a few minutes of small talk, Barnes asked D.B. if she ever touched herself and if she liked the way it felt, which made her uncomfortable. When IsBarnes reached towards her pubic region, she told him to stop and pushed his hand away. Then, Barnes “creeped” her out and made her very uncomfortable when he chuckled and said something like, “Oh, so, I can look, but I can’t touch, huh?” Barnes then told D.B. to give him a hug, which she did. WTiile they hugged, Barnes picked D.B. up and instructed her to wrap her legs around him. Wben she refused, Barnes put her down. Barnes “assured” D.B. that he was not trying to have sex with her because she was still too young.
Barnes then asked if D.B. had ever touched a bare penis, which she stated she had not. In response, Barnes pulled his penis out of his pants, grabbed D.B.’s *15 hand, and stroked his penis with her hand. As he used her hand to stroke his penis, he told her that she shouldn’t be scared because “God made what I have and what you have for a reason.” Pre-seminal fluid leaked from Barnes’ penis onto D.B.’s hand. While Barnes was wiping the liquid from D.B.’s hand, her stepmother and sister returned. Barnes instructed D.B. to hurry back to her room and to keep their talk secret.
The next day, D.B., who was suspended from school, was home with her stepmother. At some point that day, Barnes knocked on her bedroom door and asked if she had told anybody about their secret. When she stated that she had not, he gave her $10.00 and asked her to come into the hallway to speak with him. Once she was in the hallway, Barnes grabbed D.B.’s hand and rubbed it over his penis on top of his clothing. Barnes also hugged D.B., put his hands on her buttocks, and rubbed her buttocks during that incident.
After hearing the testimony, the six-person jury found defendant guilty as charged on both counts. This appeal follows.

IsLaw and analysis

On appeal, defendant challenges his convictions and sentences in three assignments of error: first, the trial court erroneously allowed into evidence “other crimes” or bad acts; second, the State failed to prove Mr. Barnes was a quadruple felony offender since the evidence of one of the predicate convictions did not include fingerprints; and third, the sentence imposed on the defendant was constitutionally excessive.
In his first assignment of error, defendant argues that the trial court erred in allowing “other crimes” testimony at trial concerning defendant’s attempted hug and kiss of the victim’s older sister. Defendant contends that the trial court’s admission of the testimony under the res gestae exception was incorrect because it was not “related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it.” Conversely, the State argues that the trial court did not err in admitting the testimony because it was admissible pursuant to La. C.E. 412.2 and the res gestae exception. The State contends that K.B.’s disclosure of her interaction with defendant started the chain of events that ultimately led to the defendant’s arrest.
Prior to trial, on August 2, 2010, the State filed its notice to introduce evidence of similar crimes.[6] In this filing, the State contended that the testimony regarding defendant’s attempted hug and kiss of KB. was admissible pursuant to the res gestae exception and La. C.E. art. 412.2.
The general rule in Louisiana is that evidence of “other crimes,” wrongs, or acts is not admissible to prove that the accused committed the charged crime just because he has committed other such crimes in the past. State v. Williams, 09-48 (La.App. 5 Cir. 10/27/09), 28 So.3d 357, 363, writ denied, 09-2565 (La.5/7/10), 34 So.3d 860. However, according to certain statutory and jurisprudential exceptions, such evidence may be admissible when it tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character. *16 State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165.
The res gestae exception is codified in La. C.E. art. 404(B)(1). See State v. Hyman, 09-409, p. 18 (La.App. 5 Cir. 2/9/10), 33 So.3d 271, 283, writ denied, 10-548 (La.10/1/10), 45 So.3d 1094. La. C.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. (Emphasis added).
Res gestae events constituting “other crimes” are deemed admissible because they are connected to the charged offense to the point that the State could not accurately present its case without reference to them. State v. Hyman, 09-409 (La.App. 5 Cir. 2/9/10), 33 So.3d 271, 283, writ denied, 10-548 (La.10/1/10), 45 So.3d 1094. The res gestae doctrine is designed to allow the story of the crime to be told in its entirety, by proving its immediate context of happenings in time and place. Id.
The Louisiana Supreme Court has held that the test of whether res gestae evidence is admissible is not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the 18inferences, whatever they may be, necessary to reach an honest verdict. State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074, 1076.
In the instant case, it was K.B.’s confession that prompted D.B. to report the abuse to her father in the first place. Once D.B. realized she was not the only victim of defendant’s advances, she confessed to K.B. what defendant had done to her. K.B. then encouraged D.B. to tell their father that she too was a victim of defendant’s advances. This context in which D.B. first disclosed the abuse is integral to the “narrative momentum and cohesiveness” of the State’s case against defendant. This information was necessary for the jury to understand the “story of the crime” in its “immediate context of happenings in time and place.” The trial judge did not abuse his discretion by admitting K.B.’s testimony under the exception.
Furthermore, even if the evidence in question was not admissible as res ges-tae, the evidence was admissible to prove defendant’s “lustful disposition towards children.” The Louisiana Supreme Court first recognized a “lustful disposition” exception to the general rules of evidence in State v. Cupit, 189 La. 509, 179 So. 837 (1938). In Cupit, the defendant was charged with assault with intent to commit rape of his niece. The State presented evidence that the defendant had raped another niece and had been charged with the rape of a third niece. The Supreme Court held the evidence was admissible because the “prior offenses ... clearly tended to show the lustful disposition the defendant bore towards his nieces, and his unnatural desire to have sexual intercourse with *17 them; all of his nieces being children of tender age.” Cwpit, 179 So. at 889.
In 2001, the Louisiana Legislature codified the “lustful disposition” exception in La. C.E. art. 412.2, which provides in pertinent part:
19When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403. (Emphasis added).
This Court, citing La. C.E. art. 412.2(A), has recognized that evidence of a prior sexual offense indicating that the defendant has a “lustful disposition toward children” is admissible if it is relevant and if the probative value of the evidence outweighs its prejudicial effect. State v. Williams, 09-48 (La.App. 5 Cir. 10/27/09), 28 So.3d 357, 363, writ denied, 09-2565 (La.5/7/10), 34 So.3d 860. See also, State v. Patterson, 05-560, p. 14 (La.App. 5 Cir. 1/31/06), 922 So.2d 1195, 1204, writ denied, 06-1191 (La.3/16/07), 952 So.2d 687 (defendant’s prior conviction for simple rape of a sixteen-year-old girl was “highly relevant to show the defendant’s lustful disposition toward teenage girls” and admissible in his aggravated rape prosecution); State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207 (evidence of the defendant’s pri- or conviction for forcible rape was admissible under La. C.E. art. 412.2 in his aggravated rape prosecution).
In the instant case, as in Patterson and Olivieri, La. C.E. art. 412.2 would apply. Here, both victims were under the age of 17 when the sexually assaultive behavior occurred. In both cases, defendant waited until the girls’ parents were away from the house then approached them as a “friend” trying to console the girls about supposed conflicts with their parents. Defendant exhibited similar conduct by engaging them in small talk about school then hugging them. Although defendant’s behavior escalated with D.B., the evidence of defendant’s behavior with KB. is probative and prejudicial to show the defendant’s lustful disposition toward teenage girls. This assignment of error lacks merit.
11flIn his second assignment of error, defendant argues that the trial court erred in adjudicating him a fourth felony offender, where the certified copy of one of his three prior convictions lacked fingerprints. In response, the State contends that other evidence was presented which sufficiently established defendant’s identity as the person convicted of attempted armed robbery in Orleans Parish Case No. 373-389.
In the multiple bill of information, the State alleged that defendant previously pled guilty to possession with the intent to distribute cocaine in Orleans Parish Case No. 363-670, simple robbery in Orleans Parish Case No. 367-287, and attempted armed robbery in Orleans Parish Case No. 373-389., While the certified copies of the convictions on the possession and simple robbery charges contained fingerprints, the certified copy of the conviction on the attempted armed robbery charge did not.
In the present case, defendant only challenges the sufficiency of the State’s evidence in case number 373-389. With respect to that case, the State introduced, among other things, a certified copy of the conviction packet, a print card of defendant taken by the fingerprint analyst, and *18 the arrest register with defendant’s fingerprints in relation to case number 373-389. Additionally, the fingerprint analyst, who was qualified as an expert, testified that it was her expert opinion that defendant’s fingerprints that she took on October 28, 2010 were the same as those on the arrest register in case number 373-389.
The defendant argues that the evidence was insufficient because the fingerprints were placed on the arrest register rather than on the conviction record. In State v. Woods, 09-399 (La.App. 5 Cir. 3/9/10), 38 So.3d 391, 398-99, writ denied, 10-0784 (La.10/29/10), 48 So.3d 1096, this Court held:
_J_yThe State is not required to use a specific type of evidence in order to carry its burden of proof pursuant to the Habitual Offender Law, La. R.S. 15:529.1. Rather, any competent evidence may be used to prove a defendant’s prior convictions. The State’s burden of proof may be met by various means including the testimony of witnesses to prior crimes, expert testimony matching fingerprints of the defendant with those in the record of prior convictions, or photographs contained in a duly-authenticated record.
Furthermore, this Court has held that testimony comparing a defendant’s current fingerprints with fingerprints found on pri- or arrest records is sufficient to prove that the defendant was the person convicted of a prior felony. State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 926, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477. (Emphasis in original).
Accordingly, we find that the evidence was sufficient to prove that defendant was the same person who was convicted of attempted armed robbery in case number 373-389.[7] This assignment of error also lacks merit.
In his third assignment of error, defendant argues that his life sentence without probation or suspension of sentence as a fourth felony offender is constitutionally excessive. He asserts that the sentence imposed should be reserved for the worst kind of offender, which he contends he is not. In response, the State argues that defendant is the worst kind of offender and that his sentence is not excessive.
 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or 112imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether *19 another sentence might have been more appropriate. State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. Id.
First, we note that defendant’s sentence is within statutory limits. At the time of the offense,[8] La. R.S. 15:529.1(A)(1) provided, in pertinent part:
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
[[Image here]]
(ii) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
| isHere, defendant’s fourth (or underlying) conviction was for sexual battery of a victim under 18 years of age,[9] in violation of La. R.S. 14:43.1, which was defined at the operative time as both a crime of violence[10] and a sex offense.[11] That offense was punishable by imprisonment for not more than ten years.
The State also proved that defendant had three predicate felony convictions: possession with the intent to distribute cocaine, in violation of La. R.S. 40:967; simple robbery, in violation La. R.S. 14:65, and attempted armed robbery, in violation of La. R.S. 14:27:64. At the time of the offense, La. R.S. 14:2(13) defined attempted armed robbery and simple robbery as crimes of violence.[12] See, La. R.S. 14:2(13)(w), and (y). Thus, the State proved that defendant had two prior felonies defined as crimes of violence. Pursuant to La. R.S. 15:529.1(A)(1)(c)(ii), the sentence applicable to defendant was mandatory life imprisonment without benefit of parole, probation, or suspension of sentence.[13]
*20 Additionally, this Court has found that, if the trial judge who imposed sentence on a defendant’s underlying conviction is the same judge who imposes the enhanced sentence in a multiple offender adjudication, that judge is deemed to be aware of the nature of the crime for the underlying conviction. State v. Woods, 09-399 (La.App. 5 Cir. 3/9/10), 38 So.3d 391, 412, writ denied, 10-0784 (La.10/29/10), 48 So.3d 1096. In the instant case, the trial judge who presided over defendant’s conviction and sentencing on his underlying offense is the same judge who presided over his adjudication and sentencing as a multiple offender as such, |14this judge was well aware that defendant had sexually battered a thirteen-year-old girl twice in a short period of time.
Moreover, we note that the defendant’s background, includes at least three felony convictions, including two crimes of violence under La. R.S. 14:2(13). Further, during the prosecution of this offense, defendant’s nature, i.e., his “lustful disposition” toward teenage girls including the victim and her older sister, came to light. This fact, in conjunction with defendant’s criminal past, indicates that defendant represents the very type of multiple offender that the statute was created to address.
Lastly, we consider the sentence imposed for similar crimes by the same court and other courts. The Louisiana Supreme Court has noted that La. R.S. 15:529.1 treats the defendant with multiple felony convictions “as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law.” State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677.
Moreover, this Court has held that repeat offenders are to receive serious sentences. State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 353. In State v. Stevenson,[14] which is factually similar to the present case, the defendant’s underlying conviction was sexual battery of a juvenile, in violation of La. R.S. 14:43.1, and his three prior felony convictions were simple burglary, unauthorized entry of an inhabited dwelling, and aggravated burglary. Stevenson, 908 So.2d at 56. In Stevenson, this Court found a defendant’s enhanced life sentence without benefits as a fourth felony offender was not excessive. Id. at 55.
Having determined that defendant’s sentence is within the statutory limits and having considered the three factors in reviewing a trial court’s sentencing 115discretion, we find that the trial judge did not abuse his discretion in imposing defendant’s enhanced sentence of life imprisonment without probation or suspension of sentence. Thus, defendant’s sentence is not constitutionally excessive. This assignment of error also lacks merit.

Errors Patent

Finally, defendant requests an error patent review in accordance with La. C.Cr.P. art. 920, which this Court customarily performs. There are several errors but none that required correction.
First, defendant’s enhanced sentence of life without probation or suspension of sentence is illegally lenient. Since defendant was found to be a fourth felony offender under La. R.S. 15:529.1 (A)(l)(c)(ii), defendant was required to receive a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. *21 However, the trial judge only sentenced him to life without probation or suspension of sentence, rendering his sentence illegally lenient.
Nevertheless, when a criminal statute requires that all or portion of a sentence be served without the benefit of probation, parole, or suspension of sentence, La. R.S. 15:301.1(A)[15] self-activates the correction and eliminates the need to remand for a ministerial correction. State v. Reed, 10-527 (La.2/15/11), 61 So.3d 74, 78. Thus, no corrective action is necessary.
Second, defendant was not advised of his multiple offender rights as required by La. R.S. 15:529.1(D)(l)(a), which provides that the trial court shall inform the defendant of the allegations contained in the bill of information, of his right to be tried as to the truth of those allegations, and of his right to remain silent. State v. Reichard, 04-110, p. 10 (La.App. 5 Cir. 7/27/04), 880 So.2d 97, 103.
| ^Generally, the failure of the trial court to advise a defendant of his right to a hearing and his right to remain silent is not considered reversible error where the defendant’s multiple offender status is established by competent evidence offered by the State at a hearing. Reichard, supra. In the instant case, defendant’s multiple offender status was established by competent evidence presented by the State at a contradictory hearing. Thus, corrective action is not necessary.
Lastly, the trial judge did not conduct an admit/deny hearing as required by La. R.S. 15:529.1(D)(l)(a), which requires “the offender to say whether the allegations [in the multiple bill] are true.” This Court has held that a defendant waives his right to admit or deny the allegations in the multiple offender bill .when he proceeds to the multiple offender hearing without objecting. See State v. Packnett, 03-1446 (La.App. 5 Cir. 4/27/04), 873 So.2d 789, 794, writ denied, 04-2559 (La.6/24/05), 904 So.2d 736. Because defendant proceeded to his multiple offender proceeding without any objections, again no corrective action is required.
In conclusion, defendant’s convictions, multiple offender adjudication, and sentences aré affirmed.

TRIAL COURT JUDGMENT AFFIRMED.

. The State alleged that defendant was a fourth felony offender on the basis that he had two underlying and two predicate felony convictions. Defendant’s underlying felony convictions can both be enhanced because he was convicted of separate felonies arising out of separate criminal offenses committed at separate times. See State v. Morgan, 06-529, p. 3 (La.App. 5 Cir. 12/12/06), 948 So.2d 199, 202 n. 4.

. Joseph Barnes was born on July 24, 1975. In January of 2006, defendant was 30 years old.

. To protect the victims of sexual offenses, La. R.S. 46:1844(W) precludes public officials, including, but not limited to, judicial officers, from publicly disclosing their identity. To protect their identity and preserve their privacy, we will refer to the victims and their immediate family members by their initials in this opinion.

. K.B. was born on August 19, 1989. In January of 2006, K.B. was 16 years old.

. D.B. was born on May 29, 1992. In January 2006, D.B. was 13 years old.

. The prosecutor indicated that he filed the notice of intent in an abundance of caution because, under La.C.Cr.P. art. 720, evidence admitted pursuant to La. C.E. art. 412.2 does require notice. Evidence presented under the res gestae exception does not require a notice of intent under La.C.Cr.P. art. 720. State v. Ridgley, 08-675 (La.App. 5 Cir. 1/13/09), 7 So.3d 689, 697, writ denied, 09-0374 (La. 11/6/09), 21 So.3d 301.

. We also note that, when defendant took the stand at trial, he admitted that he had three felony convictions, namely, possession with the intent to distribute cocaine, simple robbery, and attempted armed robbery. If an offender with multiple felony convictions "acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section.” La. R.S. 15:529.1(D)(3).

. A defendant should be sentenced pursuant to the version of La. R.S. 15:529.1 in effect at the time of the commission of the charged offense. State v. Parker, 03-0924 (La.4/14/04), 871 So.2d 317, 326.

. The victim was 13 years of age at the time of the offense.

. La. R.S. 14:2(13)(Z).

. See, La. R.S. 15:540 et seq. At the time of the offense, La. R.S. 15:541(14.1) defined a "sex offense,” in pertinent part, as "... any provision of Subpart C of Part II ... of Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950, committed on or after June 18, 1992....” La. R.S. 14:43.1 was, and still is, classified under Subpart C of Part II of Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950.

. The present designation, La. R.S. 14:2(B)(21), and (23), was enacted by Acts 2006, No. 72, § 1 and took effect on August 15, 2006.

. Defendant was sentence to life imprisonment without benefit of probation or suspension of sentence, which is, in fact, illegally *20 lenient. This issue is addressed in the Error Patent discussion, infra.

. 05-52 (La.App. 5 Cir. 6/28/05), 908 So.2d 48, 56, writ denied, 05-2592 (La.6/2/06), 929 So.2d 1247.

. La. R.S. 15:301.1(A) provides, in pertinent part: "The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence."